Case 1:16-cv-01958-JEJ-MCC   Document 1-4   Filed 06/30/16   Page 1 of 16

# SETTLEMENT AGREEMENT BETWEEN

# THE UNITED STATES OF AMERICA,

# THE MILTON HERSHEY SCHOOL, AND

# MOTHER SMITH (ON BEHALF OF HERSELF AND ABRAHAM SMITH)

# UNDER THE AMERICANS WITH DISABILITIES ACT

## Press Release

## BACKGROUND

1. This Settlement Agreement ("Agreement") is entered into by and among the United States of America ("United States"), the Milton Hershey School ("School"), and Mother Smith, on behalf of herself and her minor son, Abraham Smith (collectively, "the Parties").[1]

2. The School is a cost-free, private residential school, open year-round, and serves children with demonstrated social and financial needs. The School enrolls children from age four through high school graduation. The School is operated pursuant to the terms of a Deed of Trust of Milton and Catherine Hershey, a Pennsylvania charitable trust ("Trust"), and is overseen by the Attorney General of the Commonwealth of Pennsylvania. The School is funded through income from the Trust. The School is governed by a Board of Managers, which delegates day-to-day operations to the School President and his or her designees.

3. In a federal lawsuit filed in November 2011, *Mother Smith v. Milton Hershey School,* Civil Action No. 11-cv-7391 (E.D. Pa.) ("Lawsuit"), Mother Smith alleges through a Complaint that the School violated title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181, *et seq.,* and its implementing regulation, 28 C.F.R. Part 36, as well as committed common law torts, by refusing to consider Abraham Smith for enrollment in the School due

6/28/2016     Settlement Agreement Between The United States of America, The Milton Hershey School, and Mother Smith (On Behalf Of Herself and Abraham Smith)

Case 1:16-cv-01958-JEJ-MCC   Document 1-4   Filed 06/30/16   Page 2 of 16

to the fact that Abraham Smith has HIV. The School responded by answering the Complaint and asserting a counterclaim seeking a Declaratory Judgment as to its rights and obligations under the ADA.

4. Following the filing of the Lawsuit, the United States initiated an investigation (DJ # 202-63-162) of the School's actions regarding Abraham Smith under the ADA and the Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.* ("FHA"). The United States finds that the School has cooperated fully with the United States' investigation.

5. The School, Mother Smith, and Abraham Smith agree that it is in their respective best interests, and the United States believes that it is in the public interest, to resolve this dispute amicably and without further litigation. The Parties have therefore voluntarily entered into this Agreement, agreeing as follows:

## TITLE III COVERAGE AND FINDINGS

6. The United States Attorney General is responsible for administering and enforcing title III of the ADA, 42 U.S.C. §§ 12181-12189, and its implementing regulation, 28 C.F.R. Part 36.

7. Abraham Smith, a boy with HIV, has a physical impairment that substantially limits one or more major life activities, including the operation of his immune system, which is a major bodily function. He therefore has a disability within the meaning of 42 U.S.C. § 12102 and 28 C.F.R. § 36.104.

8. The School is a private educational institution, with its principal location at 801 Spartan Lane, Hershey, Pennsylvania 17033. The School owns, leases (or leases to), or operates a place of public accommodation within the meaning of 42 U.S.C. § 12182(a); is a private entity within the meaning of 42 U.S.C. § 12181(6); and is considered a place of public accommodation because it affects commerce and is a place of education within the meaning of 42 U.S.C. § 12181(7). *See also* 28 C.F.R. § 36.104.

9. Under title III of the ADA, no person who owns, leases (or leases to), or operates a place of public accommodation may discriminate against an individual on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or

Case 1:16-cv-01958-JEJ-MCC   Document 1-4   Filed 06/30/16   Page 3 of 16

accommodations of any place of public accommodation. 42 U.S.C. § 12182(a). Title III of the ADA further provides that it is discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual because of the known disability of an individual with whom the individual is known to have a relationship or association. 42 U.S.C. § 12182(b)(1)(E); 28 C.F.R. § 36.205.

10. Under title III of the ADA, discrimination includes the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered. 42 U.S.C. § 12182(b)(2)(A)(i); 28 C.F.R. § 36.301(a).

11. A public accommodation shall make reasonable modifications in policies, practices, or procedures, when the modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the public accommodation can demonstrate that making the modifications would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. § 12182(b)(2)(A)(ii); 28 C.F.R. § 36.302(a).

12. Title III of the ADA also provides that entities are not required to permit an individual to participate in or benefit from the goods, services, facilities, privileges, advantages, and accommodations of such entity where such individual poses a direct threat to the health or safety of others. The term "direct threat" means a significant risk to the health or safety of others that cannot be eliminated by a modification of policies, practices, or procedures or by the provision of auxiliary aids or services. 42 U.S.C. § 12182(b)(3); 28 C.F.R. §§ 36.104, 36.208.

13. In determining whether an individual poses a direct threat to the health or safety of others, a public accommodation must make an individualized assessment, based on reasonable judgment that relies on current medical knowledge or on the best available objective evidence, to ascertain: the nature, duration, and severity of the risk; the probability that the

6/28/2016    Settlement Agreement Between The United States of America, The Milton Hershey School, and Mother Smith (On Behalf Of Herself and Abraham Smith)

Case 1:16-cv-01958-JEJ-MCC   Document 1-4   Filed 06/30/16   Page 4 of 16

potential injury will actually occur; and whether reasonable modifications of policies, practices, or procedures or the provision of auxiliary aids or services will mitigate the risk. 28 C.F.R. § 36.208(b). A "direct threat" analysis by a public accommodation cannot be based on speculation, generalizations, unfounded fears, or stereotypes about the risks posed by the presence of a person with HIV in that place of public accommodation.

14. In April 2011, Abraham Smith applied for admission to the School's eighth grade class, commencing in the fall of 2011. The information provided to the School on behalf of Abraham Smith, based on documentation required by the School as part of its application process, included documents disclosing that he has HIV.

15. On June 30, 2011, the School sent Mother Smith a letter stating in relevant part that Abraham Smith "will not be considered for possible enrollment," and "[a]fter a review of the information, it has been determined that [Abraham's] documented needs are beyond the scope of the Milton Hershey School programs. Specifically we are unable to meet his needs in our residential setting."

16. On August 5, 2011, the AIDS Law Project of Pennsylvania ("ALPP"), counsel to Mother Smith and Abraham Smith, contacted the School on their behalf to request that Abraham Smith be considered for admission to the School.

17. In response to this request, the School contends that it conducted a further review of its initial decision. The School acknowledged to ALPP that it had discontinued processing Abraham Smith's application because he has HIV. The School asserted various defenses under the ADA and did not change its decision.

18. On November 30, 2011, the Lawsuit was filed.

19. In its Answer to the Lawsuit, the School denied that it violated Abraham Smith's rights under the ADA or other laws. The School contended that it stands "in loco parentis" to all children attending the School, and that its decision was the result of its analysis of potential risks to other students and the legal rights of Abraham Smith or other applicants with HIV. The School further contended that it believed it was making an appropriate decision as a matter of

Case 1:16-cv-01958-JEJ-MCC   Document 1-4   Filed 06/30/16   Page 5 of 16

law.  In its Answer to the Lawsuit and in response to the United States' investigation, the
School has provided information it believes supports its decision and defenses.

20. The United States, having considered all information gathered in the course of its
investigation, has determined that while the School states that it did not act with malice or
animus toward Abraham Smith or children with HIV, the School cannot show that enrolling
Abraham Smith or other children with HIV would pose a "direct threat" to the health or
safety of others under 42 U.S.C. § 12182(b)(3) and 28 C.F.R. § 36.208.  Therefore, the United
States has determined that the School violated the ADA by rejecting Abraham Smith's
application for admission to the School based on the fact that he has HIV, thereby denying
him the opportunity to participate in or benefit from the goods, services, facilities, privileges,
advantages, or accommodations of the School, in violation of 42 U.S.C. § 12182 and 28
C.F.R. §§ 36.201 and 36.301.

21. The United States has further determined that the School discriminated against Mother Smith
by denying Abraham Smith's application for admission to the School based on the fact that he
has HIV, thereby denying her, among other things, privileges, advantages, accommodations,
and other opportunities because of Abraham Smith's known disability.  42 U.S.C. § 12182(b)
(1)(E); 28 C.F.R. § 36.205.

22. This Agreement is a result of a compromise between the Parties and shall never, at any time
or for any purpose, be considered an admission of liability by the School or any of the
Released Parties as to the claims of the United States, Mother Smith, or Abraham Smith.  As
part of this compromise, the School accepts the determination of the United States on the
issues raised herein in the same manner as if these issues had been decided in the Lawsuit on
its "Counter-Claim for Declaratory Judgment."

## ACTIONS TO BE TAKEN BY THE MILTON HERSHEY SCHOOL

23. Consistent with the position taken in its July 12, 2012, letter to Mother Smith, the School
shall not exclude persons with disabilities, including persons with HIV, from participation in
or deny them the benefits of the full and equal enjoyment of its goods, services, facilities,
privileges, advantages, or accommodations, on the basis of their disability, as provided in and

Case 1:16-cv-01958-JEJ-MCC   Document 1-4   Filed 06/30/16   Page 6 of 16

as subject to the defenses enumerated in title III of the ADA and its implementing regulation, 28 C.F.R. Part 36.

24. The Milton Hershey School and the ALPP have agreed on the terms of a joint statement concerning this Agreement ("Joint Statement"). On the date that the Joint Statement is released, the School shall post the Joint Statement on its website (currently http://www.mhs-pa.org/), where it shall remain for a period of at least three hundred sixty-five (365) days.

25. Within fifteen (15) calendar days of the Effective Date of this Agreement, the School shall draft a non-discrimination and equal opportunity policy applicable to its programs and services for students ("EO Policy") to expressly provide, subject to the recognized defenses in the ADA and its implementing regulation, the following:

   a. The fact that a child has HIV may not be a factor on which applicants, or current students, may be denied admission to or disenrolled from the School.

   b. The School does not discriminate against applicants or students on the basis of disability.

   c. Applicants and students with disabilities have an equal opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, and accommodations provided by the School.

   d. The School shall make reasonable modifications to its policies, practices and procedures when the modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities.

Once drafted, the School shall provide a copy of the EO Policy to counsel for the United States and ALPP for review and comment. Within ten (10) days of receipt of comments by the United States and ALPP, the School shall submit any revisions to counsel for the United States for approval. Within fifteen (15) calendar days of receipt of the United States' approval, such EO Policy, with any edits provided by the United States, will be implemented and prominently posted on the School's official website (where it will remain for the Term of this Agreement), and will be distributed, at a minimum, to all persons who are affiliated with

Case 1:16-cv-01958-JEJ-MCC   Document 1-4   Filed 06/30/16   Page 7 of 16

the School and who are involved in any of the following aspects of the School's operations: (i) the education of School enrollees; (ii) the direct supervision of School enrollees in student homes; (iii) the provision of medical, dental, psychological, behavioral, or social work-related care to School enrollees; and (iv) the School's admissions process (including, but not limited to, recruitment activities, direct handling of applications, academic/admissions/medical consultation, and the processing or gathering of any information on applicants). The EO Policy and Joint Statement shall also be provided to all Parents/Sponsors of children currently enrolled at the School via a separate mailing, and shall be posted on the School's website (currently http://www.mhs-pa.org/) and at the URL where the December 9, 2011, Statement regarding its position on Abraham Smith's application to the School was previously located, where both shall remain for a period of at least three hundred sixty-five (365) days. Counsel for the United States and ALPP shall be provided with copies of the transmittal to all Parents/Sponsors of children currently enrolled at the School.

26. On or before April 1, 2013, the School shall develop and provide training on title III of the ADA ("Staff/Administrator Training"), with a focus on HIV-related discrimination, and such training shall also be provided in school years 2013-14, 2014-15, and 2015-16, to persons affiliated with the School (whether employees, independent contractors, volunteers, or otherwise) whose responsibilities fall in the following areas:

    a. all persons who provide any educational instruction (including, but not limited to, pre-K through high school instruction, vocational instruction, and tutoring) to School enrollees;

    b. all persons (including, but not limited to, houseparents and relief houseparents) who provide care to School enrollees in student homes;

    c. all persons whose official job responsibilities involve providing medical, dental, psychological, behavioral, or social work-related care to School enrollees;

    d. all persons involved in the admissions process (including, but not limited to, recruitment activities, interface with the public on behalf of the School, direct handling of applications, academic/admissions/medical consultation, and the processing or

Case 1:16-cv-01958-JEJ-MCC   Document 1-4   Filed 06/30/16   Page 8 of 16

gathering of any information on applicants); and

     e. all School administrators and officers.

For persons who must receive the Staff/Administrator Training under the terms of this Agreement but who begin their affiliation with the School, or whose affiliation with the School becomes active (*e.g.*, after their return from leave status), after the annual training session has occurred, the School shall provide the training specified herein within sixty (60) days after the individual's commencement or reactivation of status with the School.

27. On or before April 1, 2013, the School shall review and, if necessary, revise its current training on Universal Precautions ("Universal Precautions Training"). This training shall be provided on or before April 1, 2013, and again in school years 2013-14, 2014-15, and 2015-16, to persons affiliated with the School (whether employees, independent contractors, volunteers, or otherwise) whose responsibilities fall in the following areas:

     a. all persons who provide any educational instruction (including, but not limited to, pre-K through high school instruction, vocational instruction, and tutoring) to School enrollees;

     b. all persons (including, but not limited to, houseparents and relief houseparents) who provide care to School enrollees in student homes; and

     c. all persons whose official job responsibilities involve providing medical, dental, psychological, behavioral, or social work-related care to School enrollees.

For persons who must receive the Universal Precautions Training under the terms of this Agreement, but who begin their affiliation with the School or whose affiliation with the School becomes active (*e.g.*, after their return from leave status) after the annual training session has occurred, the School shall provide the training specified herein within sixty (60) days after the individual's commencement or reactivation of status with the School.

28. The content of the Staff/Administrator Training, together with the text of all training manuals or written materials used in the Staff/Administrator Training, shall be consistent with the

provisions of this Agreement. The School shall provide a copy of the content of the Staff/Administrator training to counsel for the United States and ALPP for review and comment no later than December 15, 2012. Within fifteen (15) days of receipt of comments by the United States, the School shall submit any revisions to counsel for the United States for approval. The United States will provide the School with its final comments and revisions (which, if accepted, shall constitute the United States' approval of the Staff/Administrator Training) by no later than February 1, 2013.

29. The School shall maintain attendance records of all Staff/Administrator Training and Universal Precautions Training conducted pursuant to this Agreement, which shall include the names and respective job titles of the attendees, as well as the date, time and location of the training sessions.

30. During each academic year for the Term of this Agreement, the School shall provide instruction to all of its students ("Student Instruction") on (1) the importance of treating individuals with disabilities in a respectful and courteous way; (2) the School's refusal to tolerate harassment or bullying on the basis of disability; and (3) the practice of age-appropriate universal precautions.

31. All training required by this Agreement may be combined with other instruction provided regularly to those same groups of individuals.

32. On May 1, 2013, and then on July 1 of each subsequent calendar year during the Term of this Agreement, the School shall provide the United States with a written report ("Report") regarding its actions in compliance with this Agreement. Each Report shall include: (1) attendance records of all Staff/Administrator Training and Universal Precautions Training conducted pursuant to this Agreement during the preceding twelve-month period; (2) a summary of the nature and types of Student Instruction provided under paragraph 30; and (3) a listing (via unique identifier, which identifier for each individual shall be consistent across all Reports required under this Agreement) of all School enrollees during the preceding twelve-month period whom the School knows to have HIV and any changes in their enrollment status during that time.

Case 1:16-cv-01958-JEJ-MCC   Document 1-4   Filed 06/30/16   Page 10 of 16

33. During the Term of this Agreement, the School shall notify the United States within thirty (30) days of the School's becoming aware that an applicant to the School has HIV, and the status of his or her application. The School shall use a unique identifier for all such reports (which identifier for each individual shall be consistent across all notifications provided pursuant to this paragraph). The School shall continue to provide to the United States monthly updates regarding each such applicant until the application in question has been finally processed and a decision has been communicated to the applicant (which decision shall be reported to the United States no later than thirty (30) days after the decision has been made).

34. Nothing in this Agreement shall restrict the School's ability to change, modify, or eliminate any terms or benefits of enrollment, including, but not limited to, the provision of medical care, so long as such changes apply to all students without regard to disability.

35. Nothing in this Agreement shall be deemed to restrict the School's policies and practices regarding the terms and conditions of admission and enrollment, including, but not limited to, parental agreements regarding confidentiality of medical information and restrictions on student behavior (including sexual behavior), so long as those rules, policies, and procedures are applied to all students and are consistent with federal law.

### PROVISIONS REGARDING ABRAHAM SMITH, MOTHER SMITH, AND THE LAWSUIT

36. In a letter dated July 12, 2012, the School stated: "The Milton Hershey School would like to continue processing [Abraham's] application for admission to the School…. This offer to reconsider his application is being made unconditionally." The letter further stated: "The School is ready to continue processing [Abraham's] application at any time. We cannot legally waive the admission eligibility process, but we can expedite it, and we would like to…." The offer was sent to Abraham Smith's counsel of record, with a copy sent to the United States.

37. Mother Smith has decided that enrollment at the School is not in Abraham Smith's best interests and has declined the School's July 12, 2012, offer to continue the application

process, and has further decided not to accept an offer of enrollment if one were made.  After
negotiation, the Parties have therefore agreed that the School will pay a total of $700,000 in
damages to Abraham Smith (care of Mother Smith, consistent with applicable laws regarding
payment to minors) and to Mother Smith ("the Payments").  The Payments are inclusive of
the alleged compensatory damages that were or could have been recovered in the Lawsuit or
in an action by the United States.  The School shall tender the Payments within thirty (30)
days of the Effective Date of this Agreement in the manner directed by ALPP.

38.  Mother Smith (on behalf of herself and Abraham Smith) agrees that the decision to not pursue
enrollment at the School is irrevocable and binding for all purposes.  Mother Smith (on behalf
of herself and Abraham Smith) understands and agrees that as a result of this decision, and
the receipt of the Payments, Abraham Smith is ineligible for admission to the School now and
in the future, and they further agree that Abraham Smith will not reapply for admission to the
School.  Mother Smith (on behalf of herself and Abraham Smith) waives all rights to any
other form of injunctive relief, prospective or otherwise, under any federal or state statute or
at common law, with respect to Abraham Smith's application for admission to the School.
The United States agrees that the consequences of this agreement between Mother Smith (on
behalf of herself and Abraham Smith) and the School as set forth in this paragraph are
appropriate.

39.  Mother Smith's execution of this Agreement (on behalf of herself and Abraham Smith)
constitutes Mother Smith's and Abraham Smith's (and their heirs, successors, assigns, agents,
and representatives) release of all claims against the Released Parties under federal, state or
local statute, or common law claims of any type, whether known or that might be
subsequently discovered, involving alleged acts or omissions prior to the Effective Date of
this Agreement that Abraham Smith and/or Mother Smith might have or claim to have had
against the School.  This is a General Release.  The term "Released Parties" as used in this
Agreement includes the School and its affiliates, assignees, and (for each such entity) their
respective Boards of Managers, Board of Directors, trustees, officers, employees, independent
contractors, volunteers, agents, directors, attorneys, shareholders and contracted employees
and their employers; any other person or entity that was or could have been made a party to

Case 1:16-cv-01958-JEJ-MCC   Document 1-4   Filed 06/30/16   Page 12 of 16

6/28/2016     Settlement Agreement Between The United States of America, The Milton Hershey School, and Mother Smith (On Behalf Of Herself and Abraham Smith)

the Lawsuit; and any other person or entity that could have been potentially responsible for alleged violations.

40. Within thirty (30) days of the last signature below, Mother Smith and Abraham Smith will cause to be filed in the Lawsuit (1) a Stipulation evidencing their consent to a dismissal of the Lawsuit with prejudice upon the Court's entry of an Order which approves this Agreement as to Abraham Smith; and, such Order shall be entered in conjunction with the Court's ruling on (2) a Petition, to be filed contemporaneously with the Stipulation, which asks the Court to approve the terms of this Agreement as to Abraham Smith, given that he is a minor. Said Petition shall include all elements required under Pennsylvania law to protect the interests of Abraham Smith, a minor child, and shall request dismissal of the Lawsuit with prejudice. Both the Stipulation and the Petition shall indicate that the School and Mother Smith consent to the dismissal of the Lawsuit and approval of the terms of the Agreement. Further, within five (5) days of the last signature below, upon written request of the School, Mother Smith and Abraham Smith will provide a copy of this Agreement to the Pennsylvania Human Relations Commission ("PHRC"), inform the PHRC that they have settled their claim against the School, and shall request that their charge of discrimination filed with the PHRC, captioned PHRC Case No. 201102850, be withdrawn.[2]   If the Court fails to approve the Agreement and to dismiss the Lawsuit with prejudice, or requires any other changes as a condition of such dismissal, or if the PHRC takes enforcement action against the School based on the allegations of this Agreement, this Agreement shall be voidable at the election of the School or the United States.

41. Within fifteen (15) days of the Effective Date of this Agreement, the School shall pay the amount of $15,000, in the form of a check or money order payable to the "U.S. Treasury," in compromise of the claims that the United States could have made for civil penalties under 42 U.S.C. § 12188(b)(2)(C) and 28 C.F.R. § 36.504(a)(3), as amended, in order to vindicate the public interest. Counsel for the School shall deliver the check or money order, via agreed-upon courier, to counsel for the United States at:  David Knight/Anne Langford, 1425 New York Avenue, NW, 4th Floor, Washington, DC 20005.

## OTHER PROVISIONS

Case 1:16-cv-01958-JEJ-MCC   Document 1-4   Filed 06/30/16   Page 13 of 16

42. In consideration for this Agreement, the United States will not institute any civil action against the School or the Released Parties alleging discrimination under the ADA or the FHA based on the allegations raised in the investigation denominated as DJ # 202-63-162, except as provided in the immediately following paragraph.

43. The United States may review the School's compliance with this Agreement or title III of the ADA at any time. If the United States believes that this Agreement or any portion of it has been violated, it will raise its concerns with the School and will attempt to resolve its concerns with the School in good faith. The United States will provide the School with thirty (30) days from the date it notifies the School of any breach of this Agreement to cure that breach before instituting an enforcement action. If the United States is unable to reach a satisfactory resolution of the issue or issues raised within thirty (30) days of the date it provides notice to the School, it may institute a civil action in the appropriate United States District Court to enforce this Agreement or title III of the ADA.

44. Failure by the United States to enforce any of the provisions of this Agreement shall not be construed as a waiver of its right to do so with regard to other provisions of this Agreement.

45. A signatory to this document in a representative capacity for the School represents that he or she is authorized to bind the School to this Agreement.

46. This Agreement constitutes the entire agreement between the Parties on the matters raised herein, except that the School and Mother and Abraham Smith have entered into a separate, confidential agreement regarding payment of attorneys' fees and costs to Plaintiffs' counsel, the ALPP. There are no other agreements, oral or written, and whether in the form of statements, promises or agreements, made by any party or agents of any party, pertaining to the subject matter of this Agreement, and to the extent there may have been, they are deemed void and of no further force or effect unless specifically contained in this Agreement.

47. This Agreement is not intended to remedy any other potential violations of the ADA or any other law that is not specifically addressed in this Agreement, including any other claims for discrimination on the basis of HIV. Nothing in this Agreement changes the School's obligations to otherwise comply with the requirements of the ADA or is intended to prevent

the School from availing itself of any defenses available to it under the ADA.

48. Mother Smith acknowledges that the School has made no representations or warranties as to the tax consequences of the Payments under this Agreement. The School will issue an Internal Revenue Service ("IRS") Form 1099 to Mother Smith and will file a Form 1099 with the IRS reflecting the Payments. Mother Smith is solely responsible and liable for any tax liability (federal, state, or local) that may be due or levied on the Payments.

### EFFECTIVE DATE/TERMINATION DATE

49. The effective date of this Agreement ("Effective Date of this Agreement") is the date that it is approved by the United States District Court with jurisdiction over the Lawsuit.

50. The duration of this Agreement (the "Term") shall be until July 1, 2016.

---

[1] Due to privacy concerns, pseudonyms are used in place of Mother Smith's and Abraham Smith's legal names in this Agreement.

[2] This particular Agreement provision is made by and between Mother Smith, Abraham Smith, and the School. The United States takes no position on this provision.

---

__/s/ Anthony J. Colistra_____

Milton Hershey School

By: ANTHONY COLISTRA

President, Milton Hershey School

801 Spartan Lane

Hershey, PA 17033

(717) 520-2003


___9/12/12_____

Date

THOMAS E. PEREZ

Assistant Attorney General

EVE L. HILL

Senior Counselor to the Assistant Attorney General


GREGORY B. FRIEL, Acting Chief

ALBERTO RUISANCHEZ, Deputy Chief

KATHLEEN P. WOLFE, Special Litigation

Case 1:16-cv-01958-JEJ-MCC   Document 1-4   Filed 06/30/16   Page 15 of 16

Counsel

___/s/ Mother Smith_____

Mother Smith, on behalf of herself

and her minor son, Abraham Smith

                      __/s/ David W. Knight_____

                      DAVID W. KNIGHT, Trial Attorney

                      __/s/ Anne E. Langford_____

                      ANNE E. LANGFORD, Trial Attorney

                      Disability Rights Section

                      Civil Rights Division

                      U.S. Department of Justice

                      950 Pennsylvania Avenue, N.W.

                      Washington, DC  20530

                      (202) 307-0663

_9/12/12_____          _____9/12/12_____

Date                                   Date

APPROVED AS TO FORM:

__/s/ Ronda B. Goldfein_____          ___/s/ Robert L. Duston_____

RONDA B. GOLDFEIN                             ROBERT L. DUSTON

SARAH R. SCHALMAN-BERGEN                      Saul Ewing LLP

AIDS Law Project of Pennsylvania             1919 Pennsylvania Avenue, NW

1211 Chestnut Street, Suite 600              Suite 500

Philadelphia, PA 19107                       Washington, DC 20036

215-587-9377                                 202-342-3415

Attorneys for Mother Smith

and Abraham Smith

                      Attorneys for the Milton Hershey School

6/28/2016       Settlement Agreement Between The United States of America, The Milton Hershey School, and Mother Smith (On Behalf Of Herself and Abraham Smith)

Case 1:16-cv-01958-JEJ-MCC   Document 1-4   Filed 06/30/16   Page 16 of 16

Cases & Matters by ADA Title Coverage | Legal Documents by Type & Date | ADA Home
Page

September 12, 2012