IN THE UNITED STATES DISTRICT COURT
FOR THE ~~EASTERN~~ MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ADAM DOBSON<br>         Plaintiff,<br>  v.<br>THE MILTON HERSHEY SCHOOL,<br>~~AND SCHOOL TRUST~~<br>and<br>~~THE MILTON HERSHEY SCHOOL TRUST~~<br>~~and~~<br>~~THE BOARD OF MANAGERS OF THE MILTON HERSHEY SCHOOL~~<br>~~and~~<br>THE HERSHEY TRUST COMPANY, AS TRUSTEE OF THE MILTON HERSHEY SCHOOL TRUST,<br>         Defendants. | :<br>:<br>:<br>:<br>: C.A. NO.:<br>:<br>: 2016-cv-1958-YK~~3596~~<br>:<br>:<br>: **JURY TRIAL DEMANDED**<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**AMENDED COMPLAINT**

Plaintiff Adam Dobson ("Adam"), by and through his attorneys Dilworth Paxson LLP, brings this Complaint and avers as follows:

This case involves a school – entrusted with children of limited means and troubled backgrounds – who callously and tragically discarded one of its students, after he resided there for almost nine years, a youth struggling with the disability of significant, but treatable, depression and related mental health issues. Because the school is set up to a be a surrogate family for students, complete with group "homes" for living and "house parents," Adam's sudden separation from his familial unit on account of the school's wrong-headed decision to expel him because of his disability led to wide-ranging and significant emotional and economic damages, as well as the loss of scholarship opportunities.

Adam was a poster-child for MHS, his happy face appearing on MHS marketing material. Adam cheerfully toiled for hours in the MHS Admissions Office for no pay, and was invited to numerous enrollment fairs throughout the northeast to encourage families to send their children to MHS. But after seeking professional help with adolescent depression, he was ignored and terminated, as a "liability" to MHS. MHS's actions failed miserably to meet the standards of care required of a residential school of its nature. MHS even exacerbated Adam's depression by attempting "conversion therapy" to change his sexual preference. It then applied its informal two-hospitalization rule to terminate Adam after he needed a second short term stay at a mental health facility. Despite being one of the children at MHS with the highest social need, Adam was terminated by MHS and released back to a poor, unstable and at-risk environment, contrary to any reasonable treatment of his depression, which needed supervised and controlled – treatment available at the MHS, where he was safe.

MHS's conduct is made all the more egregious because the shameful way MHS handled this young man's disability is not an isolated incident; rather, it is one of many violations of the Americans with Disabilities Act perpetrated by the school over the past several years, with one such occurrence leading to a settlement agreement with the United States of America explicitly prohibiting the school from engaging in such conduct. In this case, MHS coldly embarked on a strategy to terminate Adam's enrollment, in direct violation of a settlement agreement the school previously signed with the United States of America that prohibited the exact kind of discrimination that the school perpetrated against Adam, a vulnerable child with a diagnosed disability under federal law. The school's failure to strictly comply with federal law leaves childrens' lives hanging in the balance.

## PARTIES

1. Adam Dobson is an adult male individual and is a citizen of the State of New York, currently residing at 15 Ann Street, Apartment 2, New York, New York 10038.

2. Defendants The Milton Hershey School and The Hershey Trust Company refer to themselves collectively as the "Milton Hershey School and School Trust," which they describe as being an integrated tax-exempt organization composed of a not-for-profit corporation, acting as Manager under the Deed of Trust, and the Trust itself, filing one Federal Form 990 (hereinafter referred to as "MHS" or the "School" or the "School Trust" as the context implies) with its principal address at 711 Crest Lane, Hershey, Pennsylvania 17033. MHS is organized, exists and operates pursuant to and by virtue of the laws of the Commonwealth of Pennsylvania. MHS operates its residential school in Dauphin County, Pennsylvania, soliciting students for admission throughout the Commonwealth, including in Philadelphia County. With approximately $12 billion in assets, MHS is the world's wealthiest residential school, and serves children in grades K through 12. Its stated mission is to nurture and educate children in social and financial need to lead fulfilling and productive lives. The School Trust was and continues to be a charitable trust qualified under Section 501(c)(3) of the Internal Revenue Code of 1986 with its principal address at Hershey Trust Company, 100 Mansion East Road, P. O. Box 445, Hershey, Pennsylvania 17033. The School Trust is organized, exists and operates pursuant to and by virtue of the laws of the Commonwealth of Pennsylvania and engages in activity throughout Pennsylvania, including in Philadelphia County. The School Trust's purpose is to maintain "a permanent institution for the residence and accommodation of poor children . . . and the maintenance, support, and education . . . of such children." The School Trust funds the School, owns a controlling interest in The Hershey Company, a publicly-traded corporation, and wholly owns The Hershey Trust Company, its

trustee, and the Hershey Entertainment and Resorts Company ("HERCO"), which oversees resort properties along with an amusement park called Hersheypark.

3. Defendant The Hershey Trust Company (hereinafter the "Trustee") was and continues to be a Pennsylvania for-profit corporation, with its principal place of business located at 100 Mansion Road East, in Derry Township, Hershey, Pennsylvania 17033-0445. The Hershey Trust Company is organized, exists, and operates pursuant to and by virtue of the laws of the Commonwealth of Pennsylvania and engages in activity throughout the Commonwealth, including in Philadelphia County. The Trustee was organized for the purpose of serving as trustee of the School Trust and continues to serve in this role. The Trustee is wholly owned by the Milton Hershey School.

4. The School and the Trustee share a self-perpetuating, interlocking and integrated governance structure. The members of the School's Board of Managers are the same persons as the members of the board of directors of the Trustee. The School's Board of Managers and the board of directors of the Trustee will be collectively referred to herein as the "Trust/School Boards." These board members pay themselves extraordinary sums of compensation, from charitable assets, but have failed in their oversight of MHS policies and have failed to include within their membership a single residential childcare expert, or any member with the requisite experience in working with at-risk children.

5. The Trust/School Boards have been put on notice that MHS teenagers were being expelled for depression and took no action to correct this illegal activity.

6. All named defendants will be collectively referred to herein as "Defendants."

7. At all times relevant hereto, Defendants acted by and through their agents, servants and employees, each of whom acted within the scope of his or her job duties.

2. ~~Defendants The Milton Hershey School and The Milton Hershey School Trust refer to themselves collectively as the "Milton Hershey School and School Trust," which they describe as being an integrated tax exempt organization composed of a not-for-profit corporation, acting as Manager under the Deed of Trust, and the Trust itself, filing one Federal Form 990 (hereinafter referred to as "MHS" or the "School" or the "School Trusts" as the context implies) with its principal address at 711 Crest Lane, Hershey, Pennsylvania 17033. MHS is organized, exists and operates pursuant to and by virtue of the laws of the Commonwealth of Pennsylvania. MHS operates its residential school in Dauphin County, Pennsylvania, soliciting students for admission throughout the Commonwealth, including in Philadelphia County. With approximately $12 billion in assets, MHS is the world's wealthiest residential school, and serves children in grades K through 12. Its stated mission is to nurture and educate children in social and financial need to lead fulfilling and productive lives. The School Trust was and continues to be a charitable trust qualified under Section 501(c)(3) of the Internal Revenue Code of 1986 with its principal address at Hershey Trust Company, 100 Mansion East Road, P. O. Box 445, Hershey, Pennsylvania 17033. The School Trust is organized, exists and operates pursuant to and by virtue of the laws of the Commonwealth of Pennsylvania and engages in activity throughout Pennsylvania, including in Philadelphia County. The School Trust's purpose is to maintain "a permanent institution for the residence and accommodation of poor children . . . and the maintenance, support, and education . . . of such children." The School Trust funds the School, owns a controlling interest in The Hershey Company, a publicly traded corporation, and wholly owns The Hershey Trust Company, its trustee, and the Hershey Entertainment and Resorts Company ("HERCO"), which oversees resort properties along with an amusement park called Hersheypark.~~

~~3.     Defendant The Board of Managers of the Milton Hershey School (hereinafter, the "Board of Managers") was and continues to be a non-profit corporation acting as Manager of the School, with its principal address at P. O. Box 830, Hershey, Pennsylvania 17033-0830. The Board of Managers is organized, exists, and operates pursuant to and by virtue of the laws of the Commonwealth of Pennsylvania, engaging in activity throughout the Commonwealth, including in Philadelphia County. The Board of Managers was identified in the School's Deed of Trust (providing for the establishment and operation of MHS) as the governing body of MHS. These managers have broad discretion to utilize the assets of the School Trust in accordance with the Deed of Trust, in order to ensure the perpetuity of the School and oversee its operation.~~

~~4.     Defendant The Hershey Trust Company (hereinafter the "Trustee") was and continues to be a Pennsylvania for-profit corporation, with its principal place of business located at 100 Mansion Road East, in Derry Township, Hershey, Pennsylvania 17033-0445. The Hershey Trust Company is organized, exists, and operates pursuant to and by virtue of the laws of the Commonwealth of Pennsylvania and engages in activity throughout the Commonwealth, including in Philadelphia County. The Trustee was organized for the purpose of serving as trustee of the School Trust and continues to serve in this role. The Trustee is wholly owned by the Milton Hershey School and School Trust.~~

~~5.     The School, the School Trust, and the Trustee share a self-perpetuating, interlocking and integrated governance structure. The members of the School's Board of Managers are the same persons as the members of the board of directors of the Trustee. The School's Board of Managers and the board of directors of the Trustee will be collectively referred to herein as the "Trust/School Boards." These board members pay themselves~~

~~extraordinary sums of compensation, from charitable assets, but have failed in their oversight of MHS policies and have failed to include within their membership a single residential childcare expert, or any member with the requisite experience in working with at-risk children.~~

~~6.   Each member of the Trust/School Boards is currently paid in excess of $100,000 per annum by the Trustee, which generally includes a $30,000 retainer and $6,500 for every day of meetings, with each Committee Chair receiving additional compensation as well. Some of them also appoint themselves to boards of MHS's for profit controlled entities, thereby amassing additional fees that can exceed $500,000 per year for a single director in the aggregate. Because the School Trust wholly owns the Trustee and HERCO, School Trust assets, meant for poor children, are used to pay approximately $2,000,000 annually of this board compensation to already wealthy board members.~~

~~7.   The Trust/School Boards have been put on notice that MHS teenagers were being expelled for depression and took no action to correct this illegal activity.~~

~~8.   All named defendants will be collectively referred to herein as "Defendants."~~

~~9.   At all times relevant hereto, Defendants acted by and through their agents, servants and employees, each of whom acted within the scope of his or her job duties.~~

## JURISDICTION AND VENUE

~~10.~~8.   Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction over this matter because the parties are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

~~11.~~9.   Additionally, pursuant to 28 U.S.C. § 1331, this Court has federal question jurisdiction over the subject matter of Plaintiffs' claims under the Americans with Disabilities Act ("ADA"), the Fair Housing Act ("FHA") and the Fair Labors Standards Act (the "FLSA").

~~12.~~10.  Under federal question jurisdiction, this Court would have supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to Plaintiffs' federal claims that they form part of the same case or controversy.

~~13.~~11.  This action is authorized by 42 U.S.C. § 12188 and 42 U.S.C. § 3613.

12.  Venue is proper in the ~~Eastern~~Middle District of Pennsylvania by virtue of 28 U.S.C. §1391(b)(1) because The School and the Trustee are entities that reside in this judicial district, pursuant to 28 U.S.C. §1391(c).

~~Defendants actively solicit and enroll students in this judicial district, and give preferential admission to students from this judicial district.~~

13.  According to the MHS website, the School provides a "cost-free, private, coeducational home and school for children from families of low income, limited resources, and social need. The School is funded by a trust established by Milton S. Hershey and his wife Catherine. Milton Hershey School offers a positive, structured home life year-round and an excellent pre-kindergarten through 12th grade education."

14.  MHS regularly conducts business in this judicial district in a variety of ways. ~~In particular, MHS regularly conducts enrollment fairs to solicit students in counties located within this judicial district, including Berks, Bucks, Chester, Lancaster, Northampton, Montgomery and Philadelphia Counties. Defendants also mass market in these area counties, reaching out specifically (including by means of television and radio) to recruit children and persuade them to enroll, as well as to solicit potential employee houseparents. Indeed, the yearly enrollment of students from these counties is of such a number that Defendants provide separate charter bus services to and from Philadelphia, King of Prussia, and Lancaster for Thanksgiving, Christmas, Easter and summer breaks.~~

15. The School's Deed of Trust requires ~~first level~~ preferential admission to students born in ~~certain counties in Pennsylvania, including Lancaster County, which is located in~~ this judicial district. ~~The Deed of Trust also requires second level preferential admission to students residing in this judicial district, including in Philadelphia County, over students born in other states.~~ A true and correct copy of the Deed of Trust is attached hereto as Exhibit "A."

~~Approximately 17 percent of MHS students are from the Philadelphia area. The School has formed partnerships with post-secondary institutions in Philadelphia and arranges special guidance and assistance for School graduates at these institutions, including the Art Institute of Philadelphia, the Community College of Philadelphia, LaSalle University, and Temple University, through the auspices of the MHS Alliance School Programs.~~

~~Finally, the School's alumni association, which serves as a spokesperson and recruiting agent for Defendants, has chartered chapters of the Milton Hershey School Alumni Association in both Philadelphia and Lancaster Counties, both of which are within this judicial district.~~

16. The Trustee and the Trust/School Boards, by virtue of their self-described status as organizations "integrated" and "interlocking" with the School, also regularly engage in the same kind of business in this judicial district.

~~14. Venue is proper in the Eastern District of Pennsylvania by virtue of, among other things, 28 U.S.C. § 1391(b)(1) because The School, the School Trust, the Trustee and the Board of Managers are all entities that reside in this judicial district, pursuant to 28 U.S.C. §1391(c).~~

~~15. Defendants actively solicit and enroll students in this judicial district, and give preferential admission to students from this judicial district.~~

16. ~~According to the MHS website, the School provides a "cost-free, private, coeducational home and school for children from families of low income, limited resources, and social need. The School is funded by a trust established by Milton S. Hershey and his wife Catherine. Milton Hershey School offers a positive, structured home life year-round and an excellent pre-kindergarten through 12th grade education."~~

17. ~~MHS regularly conducts business in this judicial district in a variety of ways. In particular, MHS regularly conducts enrollment fairs to solicit students in counties located within this judicial district, including Berks, Bucks, Chester, Lancaster, Northampton, Montgomery and Philadelphia Counties. Defendants also mass market in these area counties, reaching out specifically (including by means of television and radio) to recruit children and persuade them to enroll, as well as to solicit potential employee houseparents. Indeed, the yearly enrollment of students from these counties is of such a number that Defendants provide separate charter bus services to and from Philadelphia, King of Prussia, and Lancaster for Thanksgiving, Christmas, Easter and summer breaks.~~

18. ~~The School's Deed of Trust requires first level preferential admission to students born in certain counties in Pennsylvania, including Lancaster County, which is located in this judicial district. The Deed of Trust also requires second level preferential admission to students residing in this judicial district, including in Philadelphia County, over students born in other states. A true and correct copy of the Deed of Trust is attached hereto as Exhibit "A."~~

19. ~~Approximately 17 percent of MHS students are from the Philadelphia area. The School has formed partnerships with post-secondary institutions in Philadelphia and arranges special guidance and assistance for School graduates at these institutions, including the Art~~

~~Institute of Philadelphia, the Community College of Philadelphia, LaSalle University, and Temple University, through the auspices of the MHS Alliance School Programs.~~

~~20. At least one member of the Board of Managers resides in this jurisdiction and conduct the business of the School from this judicial district.~~

~~21. Finally, the School's alumni association, which serves as a spokesperson and recruiting agent for Defendants, has chartered chapters of the Milton Hershey School Alumni Association in both Philadelphia and Lancaster Counties, both of which are within this judicial district.~~

~~22. The School Trust, the Trustee and the Trust/School Boards, by virtue of their self-described status as organizations "integrated" and "interlocking" with the School, also regularly engage in the same kind of business in this judicial district.~~

## FACTS

### ADAM DOBSON, A SWEET AND TENDER CHILD

~~23.~~ 17. Adam was born on May 4, 1995. He was admitted to MHS on or about August 2004, having recently turned nine years old (third grade). Adam's father passed away when Adam was six months old. During his time at MHS, Adam's mother struggled with emotional and financial difficulties. Adam attended, excelled, and thrived at MHS for more than eight years.

~~24.~~ 18. Adam was by all accounts a model student during his eight years at MHS. Indeed, it is believed that school records will demonstrate that Adam was a high-achiever and an outgoing and sensitive child. He also consistently maintained the highest levels of conduct, designated as "Spartan" or "Gold" by the School. In ninth grade, Adam achieved "All Spartan" status on account of his academic excellence. He thrived at the School and had a promising

future. He worked endless hours promoting the School in its admissions office after classes, during nights and on weekends.

25.19. But merely because Adam suffered from treatable teenage depression, MHS officials would expel him from the school at the very end of his junior year, completely disregard Adam's high-achieving student standing, rupture all his existing social bonds with friends, houseparents, teachers, coaches, counselors, and other staff, destroy the home he had found at MHS, take away his entire support structure, banish him from MHS, stigmatize and marginalize him, and send Adam back to the very environment from which he had been rescued at the age of nine, in total disregard of his well-being and with completely predictable results.

**THE SPECIAL, CUSTODIAL RELATIONSHIP EXISTING BETWEEN THE DEFENDANTS AND STUDENTS ENROLLED AT THE SCHOOL**

26.20. MHS is a private residential school for children in financial and social need from pre-kindergarten through 12th grade. It was tailor-made for young Adam, who faced severe financial and social needs upon presenting for enrollment.

27.21. MHS currently enrolls approximately 2,000 students and solicits applications for admission from children between the ages of 4 and 15.

28.22. The School spends approximately $100,000 per year per enrolled student. MHS also provides for up to approximately $80,000 in higher education benefits to each qualifying graduate.

29.23. According to the School, its students live "in large, comfortable homes with 10 to 14 students in their own age group. A pair of married houseparents oversee each home, providing the structure that children need and taking an active interest in their development."