IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ADAM DOBSON,** | : CIVIL ACTION NO. 1:16-CV-1958 |
| Plaintiff | : (Chief Judge Conner) |
| v. | : |
| **THE MILTON HERSHEY SCHOOL,** *et al.*, | : |
| Defendants | : |

**MEMORANDUM**

Plaintiff Adam Dobson ("Dobson") commenced this action against defendants, the Milton Hershey School and the Hershey Trust Company, as Trustee for the Milton Hershey School Trust (collectively, "the School"), alleging that his expulsion from the School violated federal and state law. (See Doc. 20). Before the court is the School's partial motion (Doc. 22) to dismiss Dobson's state law claims pursuant to Federal Rule of Civil Procedure 12(b)(6). FED. R. CIV. P. 12(b)(6). For the reasons that follow, the court will grant the motion.

I.  **Factual Background & Procedural History**

The instant matter arises from an allegation that the School subscribes to a "shadow policy" of expelling emotionally vulnerable students in the School's care upon a second mental health hospitalization. (See Doc. 20 ¶¶ 93-94). The School does not challenge Dobson's federal claims herein. (Doc. 23 at 1 n.1). The court will therefore refrain from an in-depth examination of the factual allegations giving rise to the federal claims at this stage in the proceedings.

Dobson's enrollment at the school was governed by a contract, styled the "Enrollment Agreement." (Doc. 11-3 at 5-8). The Enrollment Agreement outlines the duties and responsibilities of the School and the legal guardian of a child attending the School. (See id.)[1] The School is a unique institution that provides cost-free education to low income children from pre-kindergarten to twelfth grade. (Doc. 20 ¶¶ 2, 13). The School provides for its students year round, housing them in group homes with supervisory "houseparents." (Id. ¶¶ 23-25). The Enrollment Agreement summarizes these characteristics of the School's environment. (See Doc. 11-3 at 5-7). It specifies that the School "will provide a home, food, clothing, health care, and an education" for all enrolled students. (Id. at 5). Dobson's legal guardian signed the Enrollment Agreement on his behalf on July 27, 2004. (Id. at 8). The School expelled Dobson in May 2013, giving rise to the instant dispute. (Doc. 20 ¶¶ 87-98).

Dobson commenced this action on June 30, 2016 in the United States District Court for the Eastern District of Pennsylvania. (Doc. 1). The Eastern District transferred the matter to this district on September 27, 2016. (Doc. 16). Dobson filed an amended complaint (Doc. 20) on October 17, 2016, wherein he alleges violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*,

---

[1] The court may consider items on the record that are not attached to the complaint when reviewing a motion to dismiss. Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). A plaintiff may not prevent the court from considering a document, like the Enrollment Agreement, upon which claims are based by failing to attach it to the complaint or cite it explicitly in the complaint. See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993); *In re* Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

(Count I), the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, (Count II), and the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, (Count III), as well as state law tort claims for negligent breach of duty of care (Count V), negligent misrepresentation (Count VII), intentional misrepresentation (Count VIII), intentional infliction of emotional distress (Count IX), negligent infliction of emotional distress (Count X), civil conspiracy to endanger children (Count XI), breach of fiduciary duties of care and good faith (Count XII), and negligence *per se* (Count XIII).[2] (Id. ¶¶ 120-239). On November 1, 2016, the School filed a partial motion (Doc. 22) to dismiss Counts V, VII, VIII, IX, X, XI, and XII of the amended complaint.[3] (Doc. 20 ¶¶ 174-233). The motion is fully briefed and ripe for disposition.

## II.  Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In addition to reviewing the facts contained in

---

[2] Dobson's claims are not consecutively numbered; his amended complaint skips both Count IV and Count VI. (See Doc. 20 ¶¶ 159-187).

[3] The School does not challenge Dobson's state law negligence *per se* claim (Count XIII). (Doc. 23 at 1 n.1). The court refers to Dobson's state law claims collectively *passim* to the exclusion of Count XIII.

3

the complaint, the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); Pension Benefit Guar. Corp., 998 F.2d at 1196.

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556. A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Courts should grant leave to amend before dismissing a curable pleading in civil rights actions. See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108

(3d Cir. 2002). Courts need not grant leave to amend *sua sponte* in dismissing non-civil rights claims pursuant to Rule 12(b)(6), Fletcher-Harlee Corp., 482 F.3d at 252-53, but leave is broadly encouraged "when justice so requires." FED. R. CIV. P. 15(a)(2).

### III. Discussion

The School argues that the gist of the action doctrine bars Dobson's state law tort claims.[4] (Doc. 23 at 5-15). Under Pennsylvania law, the gist of the action doctrine bars tort claims when "the true gravamen, or, gist, of the claim sounds in contract." Dommel Props., LLC v. Jonestown Bank & Trust Co., 162 F. Supp. 3d 438, 443 (M.D. Pa. 2016) (quoting Dommel Props., LLC v. Jonestown Bank & Trust Co., 626 F. App'x 361, 364 (3d Cir. 2015)). A breach of contract may give rise to a tort claim, but the tort claim must be the "gist of the action," and the contract collateral, for a tort claim to be viable. Pediatrix Screening, Inc. v. TeleChem Int'l, Inc., 602 F.3d 541, 548 (3d Cir. 2010). A tort claim grounded in obligations that arise from a social policy outside of the contract may coexist with a breach of contract claim. Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc., 247 F.3d 79, 105 (3d Cir. 2001). The nature of the allegedly breached duty is the decisive factor: if the duty would not exist without the contract, then the claim sounds in contract alone. Bruno v. Erie Ins. Co., 106 A.3d 48, 68 (Pa. 2014).

---

[4] The School also challenges the merits of Dobson's misrepresentation and intentional infliction of emotional distress claims (Counts VII, VIII, IX). (Doc. 23 at 15-21). As the application of the gist of the action doctrine would render arguments on the merits moot, the court will first address the effect of the doctrine on Dobson's state law claims.

The relationship between the state and a student may give rise to a special duty of care. See Nicini v. Morra, 212 F.3d 798, 806-09 (3d Cir. 2000); D.R. by L.R. v. Middle Bucks Area Vocational Tech. Sch., 972 F.2d 1364, 1371-72 (3d Cir. 1992); see also K.A. *ex rel.* Allebach v. Upper Perkiomen Sch. Dist., No. 11-2610, 2012 WL 2362565, at *1-*2 (E.D. Pa. Mar. 12, 2012), report and recommendation adopted by 2012 WL 2362568 (E.D. Pa. June 21, 2012). But under Pennsylvania law, the relationship between a student and a *private* school is a contractual one. See David v. Neumann Univ., 177 F. Supp. 3d 920, 925 (E.D. Pa. 2016) (citing Swartley v. Hoffner, 734 A.2d 915, 919 (Pa. Super. Ct. 1999)); see also Kimberg v. Univ. of Scranton, 411 F. App'x 473, 479 (3d Cir. 2010) (quoting Swartley, 734 A.2d at 919).

Dobson avers that the School owes its students a duty of care that flows from the unique characteristics of the School. (Doc. 24 at 5-9). Dobson contends that the School maintains a custodial relationship with its students, which Dobson describes as an *in loco parentis* relationship. (Id. at 5-7, 13). He further submits that certain policy documents, including, *inter alia*, the School Handbook and the School's Equal Opportunity Policy, give rise to an extra-contractual duty of care that the School owed him while he attended the institution. (Id. at 5, 9-11).

The court disagrees. Any duty of care that the School owed Dobson during his enrollment arose exclusively from their contractual relationship. The Enrollment Agreement provides that the School would house, feed, clothe, and educate Dobson during his enrollment. (Doc. 11-3 at 5). The contract specifically states that the legal guardian of a student retains "legal custody" of said student, indicating that the School did not have guardianship of Dobson. (Id.) The

6

contractual relationship between the School and Dobson stemmed from this agreement as well as the School's policies, despite Dobson's characterization of the School's policies as "extra-contractual."  See Kimberg, 411 F. App'x at 479; David, 177 F. Supp. 3d at 925; (Doc. 24 at 9).  Dobson relies on case law concerning the relationship between the state and a student, which is inapposite in the private school setting.[5]  (Doc. 24 at 6 (citing Nicini, 212 F.3d at 806-09; K.A., 2012 WL 2362565, at *2)).  He has not articulated any social obligation or duty existing outside of his contract with the School that the School allegedly violated.  See Bohler-Uddeholm Am., 247 F.3d at 105; Bruno, 106 A.3d at 68.  Dobson's state law claims therefore sound solely in contract.  The court accordingly concludes that Dobson's tort claims Counts V, VII, VIII, IX, X, XI, and XII are barred by the gist of the action doctrine.  In view of this doctrinal barrier, the court further concludes that leave to amend would be futile.  See Fletcher-Harlee Corp., 482 F.3d at 251-53; Grayson, 293 F.3d at 108.

---

[5] Dobson also cites Kleinknecht v. Gettysburg Coll., 989 F.2d 1360, 1366-68 (3d Cir. 1993), in support of his argument.  That case involved a narrow holding applicable only in circumstances concerning a medical emergency during school-sponsored athletic activity.  Id. at 1371.  The court finds that Kleinknecht is not instructive to the matter *sub judice*.

**IV.**     **Conclusion**

The court will grant the School's motion (Doc. 22) to dismiss. An appropriate order shall issue.

　　　　　　　　　　　　　　　　　　/S/ CHRISTOPHER C. CONNER
　　　　　　　　　　　　　　　　　　Christopher C. Conner, Chief Judge
　　　　　　　　　　　　　　　　　　United States District Court
　　　　　　　　　　　　　　　　　　Middle District of Pennsylvania


Dated:     August 10, 2017