# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| ADAM DOBSON, | : | |
| | : | NO. 1:16-cv-01958-CCC |
| Plaintiff, | : | |
| | : | |
| vs. | : | (CONNER, C.J.) |
| | : | |
| THE MILTON HERSHEY SCHOOL, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS

Jarad W. Handelman
Kyle M. Elliott
17 N. Second Street, Suite 1420
Harrisburg, PA 17101
717.307.2600 (phone) / 717.307.2060 (fax)
215.977.1000 (phone) / 215.977.1099 (fax)
jwh@elliottgreenleaf.com
kme@elliottgreenleaf.com

*Attorneys for Defendants The Milton Hershey School, and The Hershey Trust Company, as Trustee of the Milton Hershey School Trust*

# TABLE OF CONTENTS

I.   INTRODUCTION ......................................................................................1

II.  PROCEDURAL BACKGROUND ..............................................................2

III. FACTUAL BACKGROUND......................................................................3

IV.  STATEMENT OF QUESTIONS INVOLVED ............................................4

V.   ARGUMENT...........................................................................................5

   A.   Legal Standard .........................................................................5

   B.   Plaintiff's Negligence *Per Se* Claim Fails Because Neither the FHA Nor the ADA Provide a Cognizable Basis for the Claim, and Because Any Such Claim is Preempted by the FLSA ......................................................6

   C.   Plaintiff Lacks Standing to Bring an ADA Claim......................................9

   D.   Plaintiff's Fair Housing Act Claim Fails As A Matter of Law Because Plaintiff Cannot Satisfy the Statutory Elements of an FHA Claim..........13

      1.   FHA Overview ...................................................................13

      2.   Plaintiff Cannot Make Out the Elements of a Claim under Section 3604(f)(1) Because He Was Not a "Buyer or Renter" of His Student Housing. ..........................................................16

      3.   Plaintiff's Section 3604(f)(2) Claim Fails Because Plaintiff Failed to Adequately Allege that Defendants Provided Different and/or Unequal Services, Privileges, or Conditions of Housing....................19

   E.   Plaintiff's FLSA Claim Fails Because Plaintiff Cannot Plausibly Allege that He Was an "Employee" of MHS....................................................23

   F.   All Claims Asserted Against HTC Must Be Dismissed Because HTC Has No Role in the Operations of the School, Does Not Fund the School, and Is an Improper Defendant Under the ADA, FHA, and FLSA ................26

      1.   Plaintiff's Own Exhibits Show that HTC Has No Role in the Operations, Admissions, and/or Funding of the School. ...................26

      2.   HTC Is Not a Proper Defendant Under the ADA, FHA, or FLSA.....29

VI.  CONCLUSION...........................................................................................30

**Cases**

*Abdus-Sabur v. Hope Vill., Inc.*,
221 F. Supp. 3d 3 (D.D.C. 2016) .................................................................. 17

*Anderson v. Macy's, Inc.*,
943 F. Supp. 2d 531 (W.D. Pa. 2013) ............................................................ 10

*Aponik v. Verizon Pa., Inc.*,
106 F. Supp. 3d 619 (E.D. Pa. 2015) .............................................................. 7

*Attanasio v. Cmty. Health Sys.*,
863 F. Supp. 2d 417 (M.D. Pa. 2012) ............................................................ 31

*Bardelli v. Allied Servs. Inst. of Rehab. Med.*,
2016 U.S. Dist. LEXIS 135358 (M.D. Pa. Sept. 30, 2016) .................. 10, 11-12

*Blair v. Wills*,
420 F.3d 823 (8th Cir. 2005) .......................................................................... 25

*Chen v. St. Beat Sportswear, Inc.*,
364 F. Supp. 2d 269 (E.D.N.Y. 2005) ............................................................. 8

*Cmty. Servs. v. Wind Gap Mun. Auth.*,
421 F.3d 170 (3d Cir. 2005) .................................................................... 15, 21

*Congdon v. Strine*,
854 F. Supp. 355 (E.D. Pa. 1994) ......................................................... 19, 21, 23

*Corwin v. B'Nai B'Rith Senior Citizen Hous., Inc.*,
489 F. Supp. 2d 405 (D. Del. 2007) ......................................................... 20, 21

*Davis v. Wilson*,
2009 U.S. Dist. LEXIS 21843 (W.D. Pa. Mar. 12, 2009) ......................... 27, 28

*Devereux Found. v. O'Donnell*,
No. 89-6134, 1990 U.S. Dist. LEXIS 368 (E.D. Pa. Jan. 12, 1990) .......... 14, 30

*Doe v. Nat'l Bd. of Med. Exam'rs*,
210 F. App'x 157 (3d Cir. 2006) .................................................................... 10

*Edwards v. Media Borough Council*,
430 F. Supp. 2d 445 (E.D. Pa. 2006) ................................................. 20, 21, 22

*Emerson v. Thiel Coll.*,
296 F.3d 184 (3d Cir. 2002) ...................................................................... 29, 30

*Emrit v. Lycoming Hous. Auth.*,
2017 U.S. Dist. LEXIS 76178 (M.D. Pa. May 17, 2017) ............................... 14

*Fair Hous. Council v. Roommate.com, L.L.C.*,
666 F.3d 1216 (9th Cir. 2012) ............................................................... 14, 30

*Flores v. Albertson's Inc.*,
2003 U.S. Dist. LEXIS 26857 (C.D. Cal. Dec. 8, 2003) ................................... 8

*Forziano v. Indep. Grp. Home Living Program*,
613 F. App'x 15 (2d Cir. 2015) .............................................................. 17, 20

*Forziano v. Indep. Grp. Home Living Program*,
2014 U.S. Dist. LEXIS 41358 (E.D.N.Y. Mar. 26, 2014) .............................. 18

*G.L. v. Ligonier Valley Sch. Dist. Auth.*,
802 F.3d 601 (3d Cir. 2015) ....................................................................... 20

*Growth Horizons, Inc. v. Del. County*,
983 F.2d 1277 (3d Cir. 1993) ................................................................ 17, 18

*Growth Horizons, Inc. v. Del. Cty.*,
983 F.2d 1277 (3d Cir. 1993) .................................................. 14, 17, 17-18, 19

*Gutwirth v. Woodford Cedar Run Wildlife Refuge*,
38 F. Supp. 3d 485 (D.N.J. 2014) ................................................................. 8

*Hammond v. U.S. Liab. Ins. Co.*,
2015 U.S. Dist. LEXIS 9973 (W.D. Pa. Jan. 28, 2015) ................................... 6

*Hollinger v. Reading Health Sys.*,
2017 U.S. Dist. LEXIS 12871 (E.D. Pa. Jan. 30, 2017) ...................... 10, 11, 13

*Hunter v. District of Columbia*,
64 F. Supp. 3d 158 (D.D.C. 2014) ........................................................ *passim*

*J.M. v. Nobel Learning Cmtys., Inc.*,
2013 U.S. Dist. LEXIS 129487 (E.D. Pa. Sept. 10, 2013) .............................. 11

*Jaffee v. United States*,
592 F.2d 712 (3d Cir. 1979) ....................................................................... 13

*Jersey Heights Neighborhood Ass'n v. Glendening*,
174 F.3d 180 (4th Cir. 1999) ............................................................ 21

*Johnson v. Dixon*,
786 F. Supp. 1 (D.D.C. 1991) ........................................................ 17

*Kelly v. Borough of Union Beach*,
2011 U.S. Dist. LEXIS 12839 (D.N.J. Feb. 8, 2011) ........................................ 8

*Khalil v. Farash Corp.*,
452 F. Supp. 2d 203 (W.D.N.Y. 2006) ........................................................ 20

*Knepper v. Rite Aid Corp.*,
675 F.3d 249 (3d Cir. 2012) ............................................................ 8

*L.C. v. LeFrak Org., Inc.*,
987 F. Supp. 2d 391 (S.D.N.Y. 2013) ........................................................ 21

*Laramore v. Ill. Sports Facilities Auth.*,
722 F. Supp. 443 (N.D. Ill. 1989) ........................................................ 21

*Levin v. Dollar Tree Stores, Inc.*,
2006 U.S. Dist. LEXIS 88595 (E.D. Pa. Dec. 6, 2006) ........................................ 7

*Martin v. Selker Bros.*,
949 F.2d 1286 (3d Cir. 1991) ........................................ 23-24, 24, 25

*McCree v. SEPTA*,
2009 U.S. Dist. LEXIS 4803 (E.D. Pa. Jan. 22, 2009) ........................................ 7

*Mirabella v. William Penn Charter Sch.*,
2017 U.S. Dist. LEXIS 40149 (E.D. Pa. Mar. 20, 2017) ........................ *passim*

*Perez v. Jasper Trading, Inc.*,
2007 U.S. Dist. LEXIS 103814 (E.D.N.Y. Nov. 27, 2007) ........................................ 8

*Pickern v. Pier 1 Imps., Inc.*,
457 F.3d 963 (9th Cir. 2006) ............................................................ 29

*Ramalingam v. Keller Williams Realty Grp., Inc.*,
121 A.3d 1034 (Pa. Super. Ct. 2015) ........................................................ 7

*Sikirica v. Nationwide Ins. Co.*,
416 F.3d 214 (3d Cir. 2005) ............................................................ 6

*Southend Neighborhood Improv. Ass'n v. County of St. Clair*,
743 F.2d 1207 (7th Cir. 1984) ............................................ 21

*Spieth v. Bucks Cty. Hous. Auth.*,
594 F. Supp. 2d 584 (E.D. Pa. 2009) ................................ 14, 30

*Sunrise Dev., Inc. v. Lower Makefield Twp.*,
2006 U.S. Dist. LEXIS 4107 (E.D. Pa. Jan. 23, 2006) ................ 22

*W.G. Nichols, Inc. v. Ferguson*,
2002 U.S. Dist. LEXIS 10707 (E.D. Pa. June 6, 2002) ................. 11

*Westport Ins. Corp. v. Black*,
513 F. Supp. 2d 157 (M.D. Pa. 2007) ................................. 5, 6

*Whitaker v. Firman*,
2013 U.S. Dist. LEXIS 117583 (W.D. Pa. Aug. 20, 2013) ............ 10, 11

**Statutes**

29 U.S.C. § 201 ..................................................... 1, 3, 4
29 U.S.C. § 203 ......................................................... 23
29 U.S.C. § 206 ......................................................... 31
42 U.S.C. § 3601 ......................................................... 1
42 U.S.C. § 3604 .................................................... *passim*
42 U.S.C. § 12101 ........................................................ 1
42 U.S.C. § 12182 ...................................................... 29

**Rules**

Fed. R. Civ. P. 7 ........................................................ 1
Fed. R. Civ. P. 12 ................................................... 1, 6

**Other**

24 C.F.R. § 100.5 ...................................................... 14
24 C.F.R. § 100.65 ............................................... 19-20, 21

# I.    INTRODUCTION

On August 10, 2017, the Court issued a Memorandum and Order dismissing all of Plaintiff Adam Dobson's ("Plaintiff") challenged state law tort claims.  (*See* ECF Docs. 50, 51.)  The Court held that "[a]ny duty of care that the School owed Dobson during his enrollment arose exclusively from their contractual relationship."  (Doc. 50 at 6.)  Therefore, Plaintiff's asserted tort claims "sound solely in contract" and are "subsumed by the express terms of the contract."  (*Id.* at 7; Doc. 78 at n.1.)

As a result, the Amended Complaint contains only four remaining Counts: (1) the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 *et seq.* ("ADA"); (2) the Fair Housing Act, 42 U.S.C. §3601 *et seq.* ("FHA"); (3) the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.* ("FLSA"); and (4) negligence *per se*. Following the Court's August 10, 2017 Order, as well as its October 10, 2017 Order denying Plaintiff's request for interlocutory appeal, and the close of the pleadings, it is clear that Counts I-III, and XIII of Plaintiff's Amended Complaint fail as a matter of law and that Defendants are entitled to judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

First, Plaintiff alleges that Defendants' violation of the ADA, FHA, and the FLSA constitutes negligence *per se*.  However, it is well settled that neither the ADA nor the FHA can serve as a proper basis for the "duty" element of a state law

claim of negligence *per se*. In addition, Plaintiff's negligence *per se* claim, to the extent it is based on an alleged violation of the FLSA, is preempted by the FLSA.

Second, Plaintiff lacks standing to assert a violation of the ADA because he has long graduated from high school and is no longer able to enroll at MHS.

Third, Plaintiff's FHA claim fails as a matter of law because Plaintiff cannot satisfy the statutory elements of an FHA claim.

Fourth, Plaintiff's claim for violation of the FLSA fails because Plaintiff cannot, and does not, plausibly allege that he was an "employee" of MHS.

Fifth and finally, all claims asserted against Defendant The Hershey Trust Company ("HTC"), as Trustee of the Milton Hershey School Trust, must be dismissed because HTC has no role in the operations of the School, does not fund the School, and is otherwise an improper Defendant under the FHA.

For all of these reasons, and for those set forth in detail below, this Court should dismiss Plaintiff's Amended Complaint with prejudice.

## II. <u>PROCEDURAL BACKGROUND</u>

On August 10, 2017, the Court granted Defendants' Motion to Dismiss in full. (Docs. 50 & 51.) Defendants filed an Answer and Affirmative Defenses to the Amended Complaint on August 24, 2017. (Doc. 53.) The pleadings are closed, and Defendants now file the instant Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

## III.  FACTUAL BACKGROUND

Plaintiff is a former student who attended MHS.  (*See* Ex. "1", Doc. No. 29, Am. Compl. at ¶ 17.)  MHS is a not-for-profit residential school established in 1910, to provide a positive, structured home life year-round to help children gain the skills to be successful in all aspects of life.  Today, MHS is among the largest residential schools in the nation, offering individualized attention, small class sizes, and top-notch academic programs to children in pre-kindergarten through 12th grade from low-income families.  MHS students live on campus in a student home during the school year with MHS employees known as "houseparents" who supervise the children while they are on duty, along with anywhere between eight to twelve students of the same age group and gender.  During School breaks and summer vacation, students return to their family homes, or have the option of remaining on campus to participate in MHS's Year Round Experiences program if they so choose.  HTC is a state-chartered trust company founded in 1905, and serves as the trustee for the Milton Hershey School Trust.

Plaintiff enrolled at MHS on or about August 2004 as a nine-year-old.  (*Id.* ¶ 56.)  According to the Amended Complaint, Plaintiff performed community service by "working" in MHS's Admissions Office in ninth grade, and continued "working" during his last two years at MHS for somewhere between 13 to 16 hours per week.  (*Id.* ¶¶ 66-67, 70.)  During eleventh grade, Plaintiff's emotional

well-being deteriorated based on struggles with his peers. (*Id.* ¶ 74.) He experienced suicidal ideation and told his friend that he was going to kill himself during a walk around campus, but he was "intercepted[.]" (*Id.* ¶¶ 77-78.) Plaintiff agreed to in-patient treatment at a local psychiatric facility. (*Id.* ¶ 80.) He later returned to MHS, but a few months thereafter, he reported to MHS personnel that he had attempted suicide. (*Id.* ¶¶ 87-88.) Plaintiff again agreed to an in-patient stay at a psychiatric facility. (*Id.* ¶ 90.)

Plaintiff alleges that MHS then expelled him, after which he returned to his mother's home in Scranton, Pennsylvania. (*Id.* ¶¶ 98, 104.) Plaintiff attended and graduated from West Scranton High School in 2014. (*Id.* ¶ 107.)

## IV.  STATEMENT OF QUESTIONS INVOLVED

1.  Whether Plaintiff's negligence *per se* claim fails as a matter of law because neither the FHA nor the ADA provide a cognizable basis for the claim, and because any such claim is preempted by the FLSA?

   *SUGGESTED ANSWER:*    *YES*.

2.  Whether Defendants are entitled to judgment on the pleadings on Count I because Plaintiff lacks standing under the ADA?

   *SUGGESTED ANSWER:*    *YES*.

4

3.     Whether Plaintiff's FHA claim fails as a matter of law because Plaintiff cannot satisfy the statutory elements of an FHA claim?

*SUGGESTED ANSWER:     YES.*

4.     Whether Defendants are entitled to judgment on the pleadings on Count III because Plaintiff cannot, and has not, plausibly alleged that he was an "employee" of MHS?

*SUGGESTED ANSWER:     YES*.

5.     Whether all claims asserted against HTC must be dismissed because HTC has no role in the operations of the School, does not fund the School, and is otherwise an improper Defendant under the statutes on which Plaintiff seeks relief?

*SUGGESTED ANSWER:     YES*.

## V.     ARGUMENT

### A.     Legal Standard.

"A motion for judgment on the pleadings is a procedural hybrid of a motion to dismiss and a motion for summary judgment." *Westport Ins. Co. v. Black*, 513 F. Supp. 2d 157, 162 (M.D. Pa. 2007) (Conner, J.).  Rule 12(c) of the Federal Rules of Civil Procedure provides any party may move for judgment on the pleadings after the pleadings are closed, but within such time as not to delay trial. Fed. R. Civ. P. 12(c).  "To succeed on a motion under Rule 12(c), 'the movant [must] clearly establish [] that no material issue of fact remains to be resolved and

that he is entitled to judgment as a matter of law.'" *Westport Ins. Co.*, 513 F. Supp. 2d at 163 (alterations in original) (quoting *Hayes v. Cmty. Gen. Osteopathic Hosp.*, 940 F.2d 54, 56 (3d Cir. 1991)); *see also Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005) (same).

The court must view the facts presented in the pleadings and the inferences drawn therefrom in the light most favorable to the nonmoving party. *Westport Ins. Co.*, 513 F. Supp. 2d at 163 (quoting *Hayes*, 940 F.2d at 56). However, the court may consider "the pleadings and attached exhibits, undisputedly authentic documents attached to the motion for judgment on the pleadings if Plaintiff's claims are based on the documents, and matters of public record." *Hammond v. U.S. Liab. Ins. Co.*, 2015 U.S. Dist. LEXIS 9973, at *20 n.1 (W.D. Pa. Jan. 28, 2015) (quotation omitted).

**B.     Plaintiff's Negligence *Per Se* Claim Fails Because Neither the FHA Nor the ADA Provide a Cognizable Basis for the Claim, and Because Any Such Claim is Preempted by the FLSA.**

In Count XIII, Plaintiff alleges that Defendants' purported violations of the ADA, FHA, and FLSA form the basis of the "duty" element of his claim for "negligence *per se*."[1]  (Am. Compl. ¶¶ 235, 238.)  However, "violation of an ADA

---

[1] The Supreme Court of Pennsylvania has explained that "[t]he concept of negligence *per se* establishes the elements of duty and breach of duty where an individual violates an applicable statute, ordinance, or regulation." *Ramalingam v. Keller Williams Realty Grp., Inc*., 121 A.3d 1034, 1042 (Pa. Super. Ct. 2015).  As set forth herein, however, the ADA, FHA, and FLSA do not qualify as an

regulation may not be used as evidence of negligence per se in a personal injury action." *McCree v. SEPTA*, Civ. A. No. 07-4908, 2009 U.S. Dist. LEXIS 4803, at *41 n.11 (E.D. Pa. Jan. 22, 2009); *see also Levin v. Dollar Tree Stores, Inc.*, Civ. A. No. 06-00605, 2006 U.S. Dist. LEXIS 88595, at *9 (E.D. Pa. Dec. 7, 2006) (refusing to allow the plaintiff to "'borrow' the ADA regulations for use as evidence of the standard of care to prove negligence"); *Aponik v. Verizon PA., Inc.*, 106 F. Supp. 3d 619, 624 (E.D. Pa. 2015) ("Because the ADA was not designed to protect those with disabilities from personal injuries, [p]laintiff is unable to state a claim for negligence per se."). The same is true for the FHA. *Hunter v. District of Columbia*, 64 F. Supp. 3d 158, 189 (D.D.C. 2014) (concluding that the FHA cannot serve as the basis for a negligence *per se* claim). Accordingly, Plaintiff cannot maintain a negligence *per se* claim based upon an alleged violation of the ADA or FHA.

Nor can Plaintiff base his negligence *per se* claim on an alleged violation of the FLSA. "[A] plaintiff's common law claims are preempted by the FLSA where the common law claims are duplicative of or based on the same facts as the plaintiff's FLSA claim." *Kelly v. Borough of Union Beach*, Civ. A. No. 10-4124, 2011 U.S. Dist. LEXIS 12839, at *6 (D.N.J. Feb. 8, 2011) (citing cases); *see also Knepper v. Rite Aid Corp.*, 675 F.3d 249, 263 (3d Cir. 2012) (approving of a

"applicable statute" for which it can supply the "duty" element of a negligence *per se* claim.

Fourth Circuit opinion that "declined to allow the plaintiffs to use state non-labor laws to enforce the substantive provisions of the FLSA"); *Gutwirth v. Woodford Cedar Run Wildlife Refuge*, 38 F. Supp. 3d 485, 490-92 (D.N.J. 2014) (dismissing state law claims as duplicative of FLSA claims). Accordingly, a court will dismiss a plaintiff's common law claims based upon preemption, if they are based on the same facts as the plaintiff's FLSA claim. *Kelly*, 2011 U.S. Dist. LEXIS 12839, at *7. This rationale applies to negligence *per se* claims as well. *Chen v. St. Beat Sportswear, Inc.*, 364 F. Supp. 2d 269, 293 (E.D.N.Y. 2005) (dismissing a negligence *per se* claim because it was founded on the same facts and was therefore duplicative of an FLSA claim).[2]

Here, Plaintiff's negligence *per se* claim is clearly duplicative of his FLSA claim. He alleges no other facts to distinguish the basis of his state law claim from his federal claims—in fact, he expressly alleges that Defendants' alleged violation of the FLSA, *alone*, "is negligence *per se*." (Am. Compl. ¶ 238.) His state law claim is therefore preempted by the FLSA. Because the ADA, FHA, and FLSA

---

[2] *See also Perez v. Jasper Trading, Inc*., 2007 U.S. Dist. LEXIS 103814, at *9 (E.D.N.Y. Nov. 27, 2007) ("As the plaintiffs' negligence claims here, like those in *Street Beat*, are ultimately based on the same factual premises as their FLSA claims — i.e., the defendants' failure to pay overtime compensation — they are duplicative of and preempted by the FLSA under the rationale adopted in *Street Beat*."); *Flores v. Albertson's Inc*., 2003 U.S. Dist. LEXIS 26857, at *20 (C.D. Cal. Dec. 8, 2003) (dismissing negligence *per se* claim because it was "based on violations of the state and federal wage and hour laws" and the "exclusive remedy for such violations is the FLSA.").

cannot serve as the basis for Plaintiff's negligence *per se* claim, Defendants are entitled to judgment on the pleadings on Count XIII of the Amended Complaint.

### C. Plaintiff Lacks Standing to Bring an ADA Claim.

"A plaintiff bears the burden of demonstrating that he has Article III standing." *Mirabella v. William Penn Charter Sch.*, 2017 U.S. Dist. LEXIS 40149, at *4 (E.D. Pa. Mar. 20, 2017) (citing *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 301 (3d Cir. 2012)). To meet this burden, a plaintiff must show:

> (1) that he is under a threat of suffering an injury in fact that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that a favorable judicial decision will prevent or redress the injury.

(*Id.*). In Count I of Plaintiff's Amended Complaint, he alleges that Defendants discriminated against him in the full enjoyment of the goods and services of a public accommodation by allegedly expelling him from MHS because of his disability. However, the Court must dismiss this cause of action because Plaintiff lacks standing to bring a claim under Title III of the ADA.

"Under Title III of the ADA, private plaintiffs may not obtain monetary damages and therefore only prospective injunctive relief is available." *Bardelli v. Allied Servs. Inst. of Rehab. Med.*, 2016 U.S. Dist. LEXIS 135358, at *21-22

(M.D. Pa. Sep. 30, 2016).[3]  "To establish standing in an action for injunctive relief, a plaintiff must show that he or she is likely to suffer future injury from the defendant's illegal conduct."  *Doe v. Nat'l Bd. of Med. Exam'rs*, 210 F. App'x 157, 159-60 (3d Cir. 2006); *Bardelli*, 2016 U.S. Dist. LEXIS 135358, at *23.  Thus, in Title III ADA cases, allegations of "[p]ast illegal conduct is insufficient" to confer standing on a plaintiff.  *Doe*, 210 F. App'x at 160; *see also Anderson*, 943 F. Supp. 2d at 538 ("Because the remedy for a private ADA Title III violation is injunctive relief, courts look beyond the alleged past violation and consider the possibility of future violations.").  "In other words, a plaintiff seeking relief under Title III must demonstrate that there is a real and immediate threat that it ***will be wronged again in the future***."  *Hollinger v. Reading Health Sys*., 2017 U.S. Dist. LEXIS 12871, at *9 (E.D. Pa. Jan. 30, 2017) (emphasis added).[4]

---

[3] *See also Hollinger v. Reading Health Sys*., 2017 U.S. Dist. LEXIS 12871, at *9 (E.D. Pa. Jan. 30, 2017) ("Under Title III of the ADA, injunctive relief is the only type of remedy available."); *Whitaker v. Firman*, 2013 U.S. Dist. LEXIS 117583, at *8 (W.D. Pa. Aug. 20, 2013) ("Under Title III, private plaintiffs are limited to recovering prospective injunctive relief; monetary damages are not available."); *Anderson v. Macy's, Inc*., 943 F. Supp. 2d 531, 538 (W.D. Pa. 2013); *Mirabella*, 2017 U.S. Dist. LEXIS 40149, at *4 (same).

[4] *See also Whitaker*, 2013 U.S. Dist. LEXIS 117583, at *11 ("In sum, Plaintiff has not alleged, let alone set forth any specific evidence, that she will suffer an injury at the hands of Defendants in the future. This is fatal to her claim for an injunction under the ADA."); *W.G. Nichols, Inc. v. Ferguson*, 2002 U.S. Dist. LEXIS 10707, at *34 (E.D. Pa. June 6, 2002) ("In order to obtain standing for prospective relief, the plaintiff must establish a real and immediate threat that he would again be [the victim of the allegedly unconstitutional practice]." (quoting

In light of this requirement, Courts within the Third Circuit have uniformly held that when a former student asserts a Title III ADA claim against a school, the former student lacks standing if the former student is no longer eligible to return to the school due to his age or a subsequent graduation. *See*, *e.g.*, *Mirabella*, 2017 U.S. Dist. LEXIS 40149, at *11, 16; *J.M. v. Nobel Learning Cmtys., Inc*., 2013 U.S. Dist. LEXIS 129487, at *5-6 (E.D. Pa. Sep. 10, 2013) (dismissing Title III ADA claim for lack of standing because "[a]s a result of his age," the former student was "neither eligible nor planning to return to Chesterbrook Newtown or Chesterbrook Chalfont."); *Bardelli*, 2016 U.S. Dist. LEXIS 135358, at *22-23 (M.D. Pa. Sep. 30, 2016) (dismissing Title III ADA claim because the former student did not "intend to ever return . . . to the dePaul School. Nor do plaintiffs contend that there is any likelihood of M.B. returning to the dePaul School, i.e., the place of the alleged ADA violation.").

In *Mirabella*, the Court dismissed a former student's Title III ADA claim against his former high school holding that the former student lacked standing to bring his claim. *Mirabella*, 2017 U.S. Dist. LEXIS 40149, at *8. The former student alleged that after attending the school for his first three years of high

---

*Brown v. Fauver*, 819 F.2d 395, 400 (3d Cir. 1987))); *Mirabella*, 2017 U.S. Dist. LEXIS 40149, at *5 ("When injunctive relief is sought in connection with a past wrong, a plaintiff does not have standing 'absent a showing of irreparable injury,' a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again.").

school, the school "constructively discharged" him before his senior year. *Id.* at *2. After the expulsion, the former student graduated from a different high school. *Id.* The Court explained that the former student lacked standing to bring a Title III ADA claim because "[f]ollowing graduation from high school, Connor no longer had a personal interest in the challenged practices" of the school and there was "no other injunctive remedy could be fashioned, given that Connor has already graduated from high school." *Id.* at *11.

Here, the face of Plaintiff's Amended Complaint conclusively shows that Plaintiff cannot possibly be injured in the future by any alleged student policies and/or procedures of MHS because Plaintiff is not eligible to return to school at MHS. Indeed, Plaintiff expressly pleads that MHS only "serves children in grades K through 12" and that Plaintiff graduated from West Scranton High School in 2014. (Am. Compl. at ¶¶ 2, 107.) Thus, as in *Mirabella*, "[f]ollowing graduation from high school, [Plaintiff] no longer had a personal interest in the challenged practices" of MHS and "no other injunctive remedy [can] be fashioned, given that [Plaintiff] has already graduated from high school." *Id.* at *11. Accordingly, Plaintiff lacks standing to assert a Title III ADA claim.[5]

---

[5] Furthermore, the specific relief Plaintiff seeks only further confirms that he lacks standing to bring this claim because none of this relief will redress *Plaintiff's* alleged injury. Indeed, Plaintiff seeks: (1) immediate qualification for the MHS scholarship program; (2) creation by MHS of a therapeutic student home for the seriously depressed children in its care, with 24 hour professional coverage; (3)

For all of these reasons, Plaintiff lacks standing to sue Defendants based on their alleged violation of the ADA and, accordingly, the Court should enter judgment in Defendants' favor on Count I of the Amended Complaint.

**D.    Plaintiff's Fair Housing Act Claim Fails As A Matter of Law Because Plaintiff Cannot Satisfy the Statutory Elements of an FHA Claim.**

**1.    FHA Overview.**

The FHA's legislatively defined purpose "is to protect the housing choices of handicapped individuals who seek to buy or lease housing and of those who seek to buy or lease housing on their behalf." *Growth Horizons, Inc. v. Del. Cty.*,

---

appointment of an advocate for children to participate in all enrollment reviews; and (4) a commitment to continue care for children suffering from a mental health disability for a duration of at least twelve (12) months from diagnosis before any decisions on termination are made.

The first type of relief – qualification for the MHS scholarship program – is actually seeking a payment of "$80,000 in post-secondary scholarships" that MHS provides to each qualifying graduate. (*Id.* ¶ 109.) But, as explained above, Title III does not permit the recovery of money damages, and Plaintiff "cannot transform a claim for damages into an equitable action by asking for an injunction that orders the payment of money." *Jaffee v. United States*, 592 F.2d 712, 715 (3d Cir. 1979).

The remaining relief is also unavailable under Title III of the ADA because even if the Court were to grant this relief, the requested relief would not "remedy ***his*** alleged injuries." *Hollinger*, 2017 U.S. Dist. LEXIS 12871, at *16 (emphasis added). Instead, the requested relief seeks to impose general requirements on Defendants that Plaintiff cannot possibly benefit from because he has already graduated high school and cannot return to MHS as a student. Therefore, Plaintiff "has no personal stake in the outcome of the case necessary to make out the 'concrete adverseness' needed to confer standing under Article III." *Id.*

983 F.2d 1277, 1283 (3d Cir. 1993). The statute does not apply to this case.[6] The FHA only prohibits "discriminatory practices attendant to the **sale or rental** of housing." *Devereux Found. v. O'Donnell,* 1990 U.S.Dist.LEXIS 368, at *20 (E.D. Pa. Jan. 12, 1990) (emphasis added); 54 Fed.Reg. 3232 (FHA prohibits discrimination "relating to the sale or rental of dwellings...or in the provision of services and facilities in connection therewith because of...handicap"); 24 C.F.R. §100.5(b) (the "Scope" of the FHA as prohibiting discrimination "related to the sale or rental of dwellings" as well as "the provision of services in connection therewith").

The FHA contains two causes of action concerning an individual's disability: Section 3604(f)(1) makes it unlawful to "deny" or "otherwise make unavailable" a dwelling because of a disability, whereas Section 3604(f)(2) prohibits discrimination in the "terms, conditions, or privileges *of a sale or rental of a dwelling*, or in the provision of services in connection therewith" because of a disability. 42 U.S.C. §§3604(f)(1),(2) (emphasis added). Plaintiff can bring these two causes of action pursuant to three distinct theories of discrimination: (1)

---

[6] FHA claims are typically only brought against landlords, municipalities, and land use authorities. *See Emrit v. Lycoming Hous. Auth.,* 2017 U.S.Dist.LEXIS 76178, at *16 (M.D. Pa. May 17, 2017); *Spieth v. Bucks Cty. Hous. Auth*., 594 F.Supp.2d 584, 592 (E.D. Pa. 2009); *Fair Hous. Council v. Roommate.com, LLC,* 666 F.3d 1216, 1220 (9th Cir. 2012) ("Congress wanted to address the problem of landlords discriminating in the sale and rental of housing, which deprived protected classes of housing opportunities.").

intential discrimination/disparate treatment; (2) disparate impact; and (3) "claims that a defendant refused to make reasonable accommodations, which arise under § 3604(f)(3)." *Cmty. Servs. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 176 (3d Cir. 2005).[7]

Here, although Plaintiff's Amended Complaint contains only one FHA Count, Plaintiff appears to attempt to assert claims under both §3604(f)(1), (Am. Compl. ¶¶141, 145-46, 155), and §3604(f)(2), (*id.* ¶155). However, Plaintiff concedes that he is not a "buyer or renter" and has failed to plead facts showing differential treatment in the privileges and/or services that he received in connection with his student housing.

Plaintiff's theory of liability under the FHA is unprecedented. The undeniable purpose of the FHA is to prohibit discrimination *in the sale or rental of a dwelling*, as well in the privileges/services *associated with that dwelling*. But here, Plaintiff's claims relate exclusively to his enrollment in a private secondary school and the School's services and/or programs, both of which have no connection to the sale/rental of a dwelling, or housing-related services.

---

[7] The FHA states that the "reasonable accommodations" provision, §3604(f)(3), is not a cause of action itself, but rather is a "a form of discrimination" and "sections (f)(1) and (f)(2) set out different conditions under which such discrimination is unlawful." *Hunter v. District of Columbia*, 64 F.Supp.3d 158, 173 (D.D.C. 2014).

Indeed, the relief that Plaintiff seeks deals with School programs and/or services and is wholly divorced from any aspect of *housing* – the purpose of the FHA. (*Id*. at ¶156.)[8] Plaintiff ignores controlling legal precedent, asking this Court to remove the *"Housing"* requirement from the "Fair Housing Act."

Accordingly, Plaintiff's claims fail as a matter of law because Plaintiff fails to plead facts that could plausibly support the statutory elements of §3604(f)(1) and (f)(2).

> **2.    Plaintiff Cannot Make Out the Elements of a Claim under Section 3604(f)(1) Because He Was Not a "Buyer or Renter" of His Student Housing.**

In order to state a prima facie claim under §3604(f)(1), the plaintiff bears the burden of proving three elements: (1) discrimination in the sale or rental of a dwelling, or otherwise making unavailable or denying a dwelling; (2) to any buyer or seller; (3) because of an individual's disability. 42 U.S.C. §3604(f)(1). Thus, in order to make out a claim under this section, the plaintiff must produce evidence showing that the plaintiff is a "buyer or renter." *Growth Horizons, Inc*., 983 F.2d at 1283 ("there can be no liability unless the defendant in a case acts to make a dwelling unavailable to a potential buyer or lessee."); *Forziano v. Indep. Grp.*

---

[8] For example, Plaintiff seeks relief compelling the School to develop an anti-discrimination policy concerning *enrollment at the School*; "School-wide sensitivity training"; appointment of an advocate for "enrollment reviews"; and a requirement that the School provide mental health services for at least twelve months for children with mental health disabilities. (Am. Compl., Prayer for Relief.). Tellingly, this requested relief does not concern housing.

*Home Living Program*, 613 F.App'x 15, 18 (2d Cir. 2015) ("the FHA makes it unlawful to discriminate in the sale or rental of any dwelling to any buyer or renter because of a handicap."); *Hunter*, 64 F.Supp.3d at 177 ("the clear language of the statute restricts the class of people who can bring a claim under section 3604(f)(1) to a 'buyer or renter.'"); *Johnson v. Dixon*, 786 F.Supp. 1, 4 (D.D.C. 1991) (finding it doubtful that free shelter inhabitants are renters because "such accommodations...have been provided gratis"); *Abdus-Sabur v. Hope Vill., Inc.*, 221 F Supp.3d 3, 15 (D.D.C. 2016).

An individual only constitutes a "buyer or seller" for the purposes of §3604(f)(1) if that individual "suppl[ies] the funds []or seek[s] a proprietary interest in the property." *Growth Horizons*, 983 F.2d at 1283 n.10. Indeed, where it is another individual or entity that provides the funds in consideration for the plaintiff's housing, that individual or entity is considered the "buyer or seller," not the plaintiff. *Id.* (explaining that "the only potential buyer or renter here is the County" because it was the entity that paid for the housing); *Hunter*, 64 F.Supp.3d at 177 ("the 'renters' are the federal agencies that provide funds to Defendants, not the Plaintiffs"); *Forziano v. Indep. Grp. Home Living Program*, 2014 U.S. Dist. LEXIS 41358, at *24 n.5 (E.D.N.Y. Mar. 26, 2014) ("Since Paul and Hava are not renters or buyers in their respective group homes, but rather receive supervised

housing as part of their Medicaid services, they cannot state a claim for relief under the FHA.").

Here, Plaintiff concedes on the face of the Amended Complaint that he was not a "buyer or renter" of his student home. Significantly, Plaintiff admits that attendance at MHS, including student housing, was provided to him "cost-free." (Am. Compl. ¶ 2.)

Quite simply, because Plaintiff was not "supplying the funds nor seeking a proprietary interest in the property, [he is] neither [a] buyer[] nor renter[]." *Growth Horizons, Inc*., 983 F.2d at 1283 n.10 (emphasis added). Indeed, the only source of "funds" Plaintiff ever mentions is his conclusory allegation – which is refuted by the very documents attached to the Amended Complaint at Exhibit A – that HTC provides funding to MHS for student housing. (Am. Compl. ¶ 154.)[9] But in any event, this allegation admits that Plaintiff is not a renter or buyer pursuant to the FHA. Indeed, it is well-established that when an entity distinct from a plaintiff is the one supplying the funds, "the 'renters' are the [entities] that provide funds to Defendants, not the Plaintiffs." *Hunter*, 64 F.Supp.3d at 177 (emphasis added); *Growth Horizons, Inc*., 983 F.2d at 1283 n.10.

Because Plaintiff admits that he neither "suppl[ied] funds" nor sought a "proprietary interest" in his student housing, Plaintiff is not a "buyer or renter"

---

[9] *See infra* Part V.E

within the meaning of §3604(f)(1).  Accordingly, this Court should enter judgment as a matter of law in favor of Defendants on Plaintiff's §3604(f)(1) claims.

    **3.**    **Plaintiff's Section 3604(f)(2) Claim Fails Because Plaintiff Failed to Adequately Allege that Defendants Provided Different and/or Unequal Services, Privileges, or Conditions of Housing**.

To state claim under §3604(f)(2), a plaintiff must satisfy the following elements: (1) discrimination; (2) in the terms, conditions, privileges, or provision of services or facilities, (3) of a sale or rental of a dwelling; (4) because of an individual's handicap.  42 U.S.C. §3604(f)(2).  In other words, a plaintiff must plead factual allegations plausibly showing "that their terms, conditions or privileges of the rental ***differed*** from other tenants" or that the level of services the defendant provided was "***inferior*** to the level of services he provides to the other tenants in the building."  *Congdon v. Strine*, 854 F. Supp. 355, 360 (E.D. Pa. 1994) (emphasis added); 24 C.F.R. § 100.65(a) ("It shall be unlawful, because of...handicap...to impose different terms, conditions or privileges relating to the sale or rental of a dwelling or to deny or limit services or facilities in connection with the sale or rental of a dwelling.").[10]

---

[10] *See also Forziano,* 613 F. App'x at 18 ("The defendants cannot have unlawfully discriminated against plaintiffs by denying a benefit that they provide to no one."); *Khalil v. Farash Corp.*, 452 F.Supp.2d 203, 208 (W.D.N.Y. 2006) (holding that a plaintiff must show that "a member of a statutorily protected class was not offered the same terms, conditions or privileges of rental of a dwelling or not provided the same services or facilities in connection therewith made available

Notably, because §3604(f)(2) is only concerned with the "terms, conditions, or privileges *of sale or rental of dwelling*," the terms, conditions, or privileges must "relate to the contract between the buyer and seller, or the lessor and lessee." *Edwards v. Media Borough Council*, 430 F.Supp.2d 445, 452 (E.D. Pa. 2006); *Corwin v. B'Nai B'Rith Senior Citizen Hous., Inc.*, 489 F.Supp.2d 405, 409-10 (D. Del. 2007).[11]  In other words, this subsection "addresses the situation where a seller imposes extra conditions on a sale [or lease] based upon the...protected characteristic of the buyer [or renter]." *Edwards*, 430 F.Supp.2d at 452.  Likewise, "[t]he 'services' at issue must relate to the sale [or rental] of a dwelling, and not just ownership [or possession] of the dwelling." *Id.*; *Corwin*, 489 F.Supp.2d at 409-10.

For example, the typical "terms, conditions, or privileges" that this provision refers to include: (1) provisions in leases, such as non-refundable security deposits, or increased security deposits and/or down payments only for disabled individuals;

---

to others under circumstances giving rise to a reasonable inference of prohibited discrimination.").

[11] Although *Edwards* and *Corbin* concerned §3604(b), not §3604(f)(2), the analysis is equally applicable to §3604(f)(2) because the two provisions use the exact same language, with the only difference being that §3604(b) prohibits discrimination based upon race, color, religion, sex, familial status, or national origin, where §3604(f)(2) applies only to disability.  When Congress uses "identical words and phrases within the same statute," those words and phrases "should normally be given the same meaning."  *G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601, 617 (3d Cir. 2015).

or (2) the level of maintenance/repairs provided to individuals in the dwelling. 24 C.F.R. §100.65(b); *L.C. v. LeFrak Org., Inc*., 987 F.Supp.2d 391, 399 (S.D.N.Y. 2013). Meanwhile, "services" refers to matters "such as sewer service," *Cmty. Servs.*, 421 F.3d at 176, and other services "generally provided by governmental units such as police and fire protection or garbage collection." *Southend Neighborhood Improv. Asso. v. Cty. of St. Clair*, 743 F.2d 1207, 1210 (7th Cir. 1984); *Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 193 (4th Cir. 1999); *Laramore v. Ill. Sports Facilities Auth*., 722 F. Supp. 443, 452 (N.D. Ill. 1989).

Here, Plaintiff's §3604(f)(2) claim fails as a matter of law because he failed to allege any facts whatsoever that the terms, conditions, or privileges associated with his purported "rental" of student housing "differed from other [students]," or that Defendants limited the services associated with his housing. *Congdon*, 854 F. Supp. at 360 (emphasis added). Defendants did not impose any "extra conditions" on his housing that were not imposed on every other MHS student and did not provide housing services to other students that it did not provide to him.

Indeed, the "contract between the...[purported] lessor and lessee," *Edwards*, 430 F.Supp.2d at 452, i.e. the Enrollment Agreement, provided for Plaintiff to

receive the exact same terms, conditions, and privileges of student housing that every other MHS student received.  (*See* Ex. "2".)[12]

Significantly, Plaintiff's Amended Complaint fails to even address what the terms, conditions, privileges, or services of his student housing were, and/or which of those were subject to Defendants' purported discrimination.  In *Sunrise Development, Inc. v. Lower Makefield Twp*., 2006 U.S. Dist. LEXIS 4107 (E.D. Pa. Jan. 23, 2006), the court granted judgment for the defendant on a §3604(f)(2) claim because plaintiff's complaint did not "address the terms, conditions, privileges or services offered in connection with the sale or rental of the assisted living facility" or "address the provision of services or facilities by defendants." *Id*. at *8 n.7.

Likewise, Plaintiff's Amended Complaint is devoid of any allegations that even "address the terms, conditions, privileges or services offered in connection with the sale or rental" of a dwelling, or "address the provision of services or facilities" by Defendants.  *Id*.  The Amended Complaint simply lodges a generic, conclusory allegation that Defendants "denied" Plaintiff's "continued residence at the School" and thereby denied him "the right to other goods, services, facilities, privileges, advantages and accommodations."  (Am. Comp. ¶ 146.)  But, this

---

[12] Although Plaintiff did not attach the Enrollment Agreement to his Amended Complaint, this Court has already ruled that the Court can consider the Enrollment Agreement in analyzing the legal merits of Plaintiff's pleadings. (Doc. 50, at 2 n.1.)

allegation, even if there was evidence to support it (which there is not), is properly within the scope of §3604(f)(1) – which fails as a matter of law for the reasons discussed *supra* – not §3604(f)(2).  *Id.*

Accordingly, because Plaintiff failed to even allege any facts that the terms, conditions, or privileges of his housing "differed from other [students]," *Congdon*, 854 F. Supp. at 360, this Court should grant judgment for Defendants on Plaintiff's §3604(f)(2) claims.

> **E.    Plaintiff's FLSA Claim Fails Because He Cannot, and Does Not, Plausibly Allege that He Was an "Employee" of MHS.**

In Count III, Plaintiff asserts a claim for violation of the FLSA, based on MHS's alleged failure to pay Plaintiff minimum wage for hours he "worked" in the MHS Admissions Office.  (Am. Compl. ¶¶ 163-64.)  However, Plaintiff cannot, and does not, plausibly allege that he was an "employee" of MHS as defined by the FLSA, and therefore his FLSA claim must fail.

An "employee" under the FLSA is defined as "any individual employed by an employer."  29 U.S.C. § 203(e)(1).  A court must look to the economic realities of the relationship when determining employee status under the FLSA.  *Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1293 (3d Cir. 1991) (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 772 (1947)).  In doing so, a court should consider six factors:

> 1) the degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree of permanence of the working relationship; 6) whether the service rendered is an integral part of the alleged employer's business.

*Id.* (quoting *Donovan v. DialAmerica Marketing, Inc.*, 757 F.2d 1376, 1382 (3d Cir. 1985)). "Not only should courts examine the 'circumstances of the whole activity,' they should 'consider whether, as a matter of economic reality, the individuals are dependent upon the business to which they render service.'" *Id.* at 1293 (quoting *DialAmerica*, 757 F.2d at 1382).

Plaintiff simply has not stated facts sufficient to allege that, as a matter of economic reality, he was an employee of MHS.[13]  First, Plaintiff's own allegations reveal that he was working in the Admissions Office as a matter of community service, not to make any sort of profit or receive any compensation.  In the Amended Complaint, Plaintiff alleges that he was required to fulfill a "community service" requirement as part of his ninth grade education at MHS, and to do so he began working in MHS's Admissions Office.  (Am. Compl. ¶ 66.)  In other words,

---

[13] Plaintiff's bare allegation that he was an "employee" in Paragraph 164 of the Amended Complaint is conclusory and merely recites the statutory language of the FLSA and governing case law pertaining to the definition of an employee.  It is entitled to no weight at the Rule 12 stage.

he did not work there in order to receive a paycheck and he does not allege that he ever expected to receive any pay for his community service. Plaintiff also alleges that MHS "asked" him to attend admissions fairs and act as a tour guide, not that he was ever required to do so. (*Id.* ¶¶ 67-68.) Plaintiff himself thus characterizes his work as "volunteer" work performed by a student attempting to fulfill community service requirements for his high school graduation. *See Blair v. Wills*, 420 F.3d 823, 829 (8th Cir. 2005) (holding that a boarding school was entitled to judgment as a matter of law on a former student's claim that the school's requirement "to perform various chores, including laundry, cleaning, lawn-mowing, brush-clearing, painting, general maintenance, and other tasks" violated the FLSA because the school was not an "employer" within the meaning of the FLSA).

Additionally, MHS provides free education to its students, including Plaintiff. (Am. Compl. ¶ 13.) Plaintiff was not responsible for paying tuition, room and board, clothes, or any of his living expenses. (*Id.* ¶¶ 22-26.) His enrollment was not contingent upon performing any of the community service alleged in the Amended Complaint, and he was not dependent upon that "volunteer" work to pay for any of his living expenses at MHS.[14] Plaintiff also

---

[14] To the extent this Court has already determined that Plaintiff's relationship with MHS is governed by contract, *i.e.* Plaintiff's Enrollment Agreement, it is noteworthy that conspicuously absent from said contract is any

fails to allege that he invested in any equipment or materials required for his volunteer work, or that he had a special skill that was important to the work.

Under all the circumstances set out in the Amended Complaint, Plaintiff has not, and cannot, plausibly allege that he was an "employee" of MHS under the FLSA. As a result, Defendants are entitled to judgment on the pleadings on Count III of the Amended Complaint.

    **F.   All Claims Asserted Against HTC Must Be Dismissed Because HTC Has No Role in the Operations of the School, Does Not Fund the School, and Is an Improper Defendant Under the ADA, FHA, and FLSA.**

        **1.   Plaintiff's Own Exhibits Show that HTC Has No Role in the Operations, Admissions, and/or "Funding" of the School and Therefore HTC is Not a Proper Party to Any Cause of Action Contained Within Plaintiff's Amended Complaint.**

Plaintiff's Amended Complaint contains inaccurate identifications and conclusory assertions about MHS, HTC, and other entities alleged to be associated with either Defendant. (Am. Compl. ¶¶ 2-4). These conclusory averments regarding the functions and roles of these various entities are expressly

---

indicia of an employment relationship between MHS and Plaintiff. (Ex. "2", Enrollment Agreement.) To the contrary, the relationship is simply one of school and student. MHS provides "a home, food, clothing, healthcare and an education" to Plaintiff free of charge, in return for which Plaintiff and his parents agree to do nothing more than abide by School policies and guidelines relating to Plaintiff's attendance and enrollment. (*See* Enrollment Agreement, ¶¶ 1-6). Nowhere in the Enrollment Agreement is it contemplated, let alone obligated, that a student receive monetary compensation for volunteer work that the student may elect to engage during his/her time of enrollment at MHS.

contradicted by the very documents Plaintiff attaches to his Amended Complaint as Exhibit A. *See* (Ex. "1".) It is well-established that a Court should not accept as true allegations of a complaint that "contradict matters properly subject to judicial notice or by exhibit." *Davis v. Wilson*, 2009 U.S. Dist. LEXIS 21843, at *5 (W.D. Pa. Mar. 12, 2009) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). These false allegations do, however, predictably mirror Plaintiff's former counsels' customary adoption of the rhetoric of F. Frederic Fouad who has been identified as the source of the theories that underpin Plaintiff's Amended Complaint, as well as a prolific complainant about the alleged "extraordinary sums of compensation" paid to Board members, the Board's alleged failures "in their oversight of MHS policies," and the purported lack of inclusion of a "residential childcare expert" on the Board. (*Id.* ¶ 4.)[15]

Indeed, the Amended Complaint fails to plead any facts establishing a plausible basis for the inclusion of HTC as a party to this action. By virtue of the statutes upon which Plaintiff's claims are premised, HTC would need to be an actor in relation to the operations of MHS about which Plaintiff complains. Without this, and as a matter of law, no liability for the alleged statutory violations of the ADA and FHA premised on the alleged discriminatory policies of MHS can

---

[15] The Board of Managers was terminated from this action on October 17, 2016. *See* Docket Sheet. Likewise, The Milton Hershey School Trust was terminated from this case on October 17, 2016. *Id.*

be established against HTC. As to the FLSA, and as more fully briefed below, Plaintiff does not even suggest, let alone aver, that HTC employed Plaintiff for purposes of entitling him to compensation from HTC under the FLSA. To the contrary, Plaintiff's FLSA claims are solely based on his voluntary student service in the Admissions Office of MHS and other MHS programming. Tellingly, the very document that Plaintiff attaches to the Amended Complaint establishes that: HTC has no role in the operation of MHS; no role in the development and implementation of MHS policies, including the purported discriminatory policy alleged in Plaintiff's Amended Complaint; and that HTC does not "fund" MHS in the manner Plaintiff baldly concludes.

The Deed of Trust clearly indicates that MHS, HTC, and the Milton Hershey School Trust, a non-party to this action, are three distinct entities: (1) The Milton Hershey School Trust is a Trust established by Milton S. Hershey and Catherine S. Hershey in 1909, (Ex. "1", Pl.'s Ex. A to Am. Compl. at p.2.); (2) HTC is the Trustee of the Milton Hershey School Trust, (*id.*); and (3) MHS is a school founded by Milton S. Hershey and Catherine S. Hershey in 1909 that is funded by non-party the Milton Hershey School Trust, (*id.*).

Significantly, it is the Milton Hershey School Trust, not HTC, that "funds" the School, with HTC, specifically concerning the operations of MHS, simply acting as a financial intermediary between the Trust and the School. (*Id.* at p.4 ¶4.)

Moreover, the Deed of Trust expressly states that HTC has no role in the operation of the School and has no power to make decisions concerning School policies, including those about which Plaintiff complains. (*Id*. at pp.7-8 ¶¶12-13, 20.) There is simply no relationship between HTC's discharge of its fiduciary responsibilities as Trustee of the Milton Hershey School Trust and the individual enrollment decisions of MHS pertaining to its students that Plaintiff avers form the basis for liability under the ADA and FHA. Equally clear, there is no evidence, let alone an allegation by Plaintiff, that HTC was Plaintiff's employer for purposes of wage liability under the FLSA.

Accordingly, this Court should dismiss all claims asserted against HTC.

### 2.    HTC Did Not Employ Plaintiff and Therefore Cannot be a Party to a Claim Under the FLSA.

In order to be liable under the FLSA, Plaintiff must plead and prove that HTC is Plaintiff's "employer." *See* 29 U.S.C. 206(a); *Attansio v. Community Health Sys.*, 863 F. Supp. 2d 417, 425-26 (M.D. Pa. 2012) (dismissing plaintiffs' FLSA claim because they failed to "sufficiently plead[]" that a defendant was "an employer for the purposes of the FLSA"). Here, however, Plaintiff pleads, albeit in conclusory fashion, that he was "subject to the direction and control of the *School's* Admission Office," not HTC; that the *School* "assigned him tasks," not HTC; and that these tasks "directly benefitted the *School*," not HTC. (Am. Compl. at ¶164) (emphasis added).

Accordingly, HTC, which is an entity completely distinct from the School's Admissions Office where Plaintiff alleges he was "employed," is not a proper defendant under the FLSA. *See Attansio*, 863 F. Supp. 2d at 425-26.

## VI. <u>CONCLUSION</u>

For all of the foregoing reasons, Defendants respectfully request that the Court enter judgment on the pleadings in favor of Defendants and dismiss Plaintiff's Amended Complaint with prejudice.

Respectfully submitted,

ELLIOTT GREENLEAF, P.C.

/s/ *Jarad W. Handelman*
Jarad W. Handelman, Esquire (PA 82629)
Kyle M. Elliott, Esquire (PA 306836)
Elliott Greenleaf, P.C.
17 N. Second Street, Suite 1420
Harrisburg, PA 17101
717.307.2600 (phone) / 717.307.2060 (fax)
215.977.1000 (phone) / 215.977.1099 (fax)
jwh@elliottgreenleaf.com
kme@elliottgreenleaf.com

Dated: July 17, 2018                    *Attorneys for Defendants*

## CERTIFICATE OF WORD COUNT

I certify that the word count in the foregoing brief, excluding tables and certificates, as determined by the Microsoft Word software with which it was produced, is 7,522 words in accordance with the Court's July 17, 2018, Order. (Doc. 91.)


 */s/ Jarad W. Handelman*
Jarad W. Handelman

## CERTIFICATE OF SERVICE

I, Jarad W. Handelman, Esquire, hereby certify that I caused the foregoing Memorandum of Law to be served via the Court's ECF system on all counsel.


*/s Jarad W. Handelman*
Jarad W. Handelman


Dated: July 17, 2018