## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ADAM DOBSON, | : | |
| | : | 1:16-CV-1958 |
| Plaintiff, | : | |
| | : | Hon. John E. Jones III |
| | : | |
| v. | : | |
| | : | |
| THE MILTON HERSHEY SCHOOL, | : | |
| *et al.*, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM AND ORDER

### June 17, 2019

The instant case is one of several related cases involving the Milton Hershey School and its alleged "shadow policy" to expel any student who undergoes more than one mental-health hospitalization while attending the program, even if those hospitalizations are recommended by school personnel.  Presently pending before the Court is a motion to dismiss filed by Defendant the Milton Hershey School and Defendant the Hershey Trust Company, as Trustee of the Milton Hershey School Trust, (collectively, "the School").  (Doc. 141).  The matter has been fully briefed and is ripe for review.  For the reasons that follow, the School's motion shall be granted in part and denied in part.

## I.    BACKGROUND

In accordance with the standard of review applicable to a motion to dismiss, the following facts are derived from Plaintiff's complaint and viewed in the light most favorable to him.

Plaintiff Adam Dobson ("Plaintiff" or "Dobson") is a former student of the Milton Hershey School, a private, nonprofit institution that offers cost-free education to low income children from pre-kindergarten through twelfth-grade. (Doc. 131 at ¶¶ 2, 13, 20, 23). The School also provides residential accommodations for students.  (*Id*. at ¶ 22).  Moreover, if a student successfully completes the School's program, that student is eligible to receive up to $80,000 in post-secondary education scholarships.  (*Id*.).

Dobson enrolled in the School at age nine.  (*Id*. at ¶ 17).  At the time of his enrollment, his legal guardian executed a document titled "Enrollment Agreement," which included the following relevant provisions:

> You agree that your child will be present and participate in the School's program on the days required by the School calendar.  All absences, except for life changing events or those the School approves in advance, are considered unexcused and will result in some disciplinary action.  If your child is away from the School for 14 days without the School's permission, the School will treat the absence as a decision by you to withdraw your child as described in . . . this agreement.

* * *

> You agree that your child must obey all School rules and policies while enrolled at the School.  These rules address behavior, program

2

requirements, visiting privileges, vacations, studies, chores, substance abuse, and all other matters relating to your child's conduct at the School. Your child must obey School staff and respect other students. You understand that failure to follow these rules and policies will result in discipline for your child and could lead, in the sole discretion of the School, to your child's expulsion.

\* \* \*

The School has rules about student dating and sexual behavior that it revises from time to time. The School will discipline your child if he or she violates these rules. You agree to read these rules and support the School's enforcement of these rules with your child. You also agree that the School is not responsible for your child's decision to violate these rules or the consequences of a violation of these rules by any student.

The School encourages sexual abstinence and provides its students with sex education, sound moral training, and opportunities to talk about their sexual development with caring adults. If your child decides to engage in sexual activity or other high risk life styles, the School will counsel your child about the risks and consequences of this activity and will seek your child's agreement to involve you in the counseling process. If your child still chooses to engage in other high risk life styles, he or she will be offered appropriate counseling and health services.

\* \* \*

You authorize the School to provide your child with all necessary medical, dental, psychological and psychiatric services while he or she is under the School's care. You agree that the School may obtain these health services for your child from health service providers outside the School. The School will make reasonable efforts to advise you in advance of all non-routine or inpatient procedures that require immediate attention. The School will make reasonable attempts to obtain your advance authorization for all elective procedures. Any health insurance you have for your child will be primarily responsible for payment of outside health care services authorized by the School.

> If you do not have insurance for your child, the School will pay all health care costs authorized by the School.

(Doc. 131-3).

Early on, Dobson was an exemplary student. (Doc. 131 at ¶ 18). By high school, however, his emotional well-being began to deteriorate when he discovered that he was gay and School personnel forced him to watch religious-based, so-called gay conversion videos after catching him watching gay pornography. (*Id*. at ¶ 74–75). By eleventh grade, Dobson suffered from depression and suicidal ideations. (*Id*. at ¶¶ 77–78). Eventually, the School intervened and recommended that Dobson attend a local inpatient mental health program. (*Id*. at ¶ 80). Throughout Dobson's stay at that program, School staff supplied him with his coursework to ensure a smooth transition back to the School. (*Id*. at ¶¶ 80–81).

After a short stay, Dobson recovered and returned to the School. (*Id*. at ¶¶ 81–83). However, in March 2013, Dobson again began suffering from suicidal ideations and informed School personnel that his depression had worsened. (*Id*. at ¶ 84). By May 2013, Dobson sought help from the School and again agreed to inpatient treatment. (*Id*. at ¶¶ 86–90). This time, however, no one from the School visited him. (*Id*. at ¶ 91). In fact, a hospital nurse informed Dobson that, ordinarily, the School enforces a two-hospitalization expulsion policy. (*Id*. at ¶¶ 91–92). That is, the nurse explained, the School usually expelled students that had

undergone more than one mental-health hospitalization, even if those hospitalizations were recommended by the School.  (*Id.* at ¶¶ 93–103).

While inpatient for his second stay, Dobson's mother informed him that he had been expelled from the School because he was "a liability."  (*Id.* at ¶¶ 98). Accordingly, after his discharge, Dobson returned to Scranton to live with his mother and siblings—a highly unstable environment to say the least.  (*Id*. at ¶ 106– 107).  Dobson avers that his removal from the School resulted in feelings of alienation, loneliness, and hopelessness, and that, as a result of the School's actions and policies, he suffered severe mental anguish and emotional distress.  (*Id*. at ¶ 115).  Dobson also contends that his expulsion disqualified him from the School's post-secondary education financial aid package.  (Id. at ¶ 115).  Nonetheless, Dobson managed to graduate from a local public high school and now attends community college.  (*Id*. at ¶ 110–113).

Dobson filed a complaint on June 30, 2016 and an amended complaint on October 17, 2016.  (Docs. 1, 20).  On November 1, 2016, Defendants filed a motion to dismiss, (Doc. 22), which the Court initially granted on August 10, 2017. (Docs. 50, 51).  On December 7, 2018, by Memorandum and Order, the Court reinstated the previously dismissed claims, reasoning that Defendants' motion had been granted improvidently.  (Docs. 127, 128).

On December 20, 2018, Dobson filed a second amended complaint asserting violations of the Americans with Disabilities Act ("ADA"), claims of negligence, negligent misrepresentation, intentional misrepresentation, intentional infliction of emotional distress, negligent infliction of emotional distress, civil conspiracy, breach of fiduciary duty, breach of contract, and negligence *per se*.

On January 17, 2019, Defendants filed the instant motion to dismiss several of Dobson's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. 141).[1]  The matter has been fully briefed, (Docs. 142, 146, 147), and is ripe for disposition.  For the reasons that follow, the Motion will be granted in part and denied in part.

## II.    STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  In resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider only the allegations in the complaint, as

---

[1]      This case was reassigned to the undersigned on January 23, 2019, following Chief Judge Connor's recusal from the matter.

well as "documents that are attached to or submitted with the complaint . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirement of Federal Rules of Civil Procedure 8(a).  Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

While a complaint attacked by a Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations, it must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To survive a motion to dismiss, a civil plaintiff must allege facts that "raise a right to relief above the speculative level . . . ." *Victaulic Co. v. Tieman*, 499 F.3d 227, 235 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).  The complaint must indicate that defendant's liability is more than "a sheer possibility." *Iqbal*, 556 U.S. at 678.

### III.   DISCUSSION

In their motion and accompanying brief, Defendants propose several bases to dismiss several of the counts outlined in Dobson's complaint.  We review each relevant argument *seriatim*.

### a.   Count I – ADA Claim

The School first argues that Dobson's claim under the ADA is moot because Dobson graduated from high school and now attends college.  In short, Defendants contend that, because Dobson will never return to high school generally, or to the School specifically, he is ineligible for the prospective injunctive relief available to him under the ADA.  (Doc. 142 at 7–8 (citing *Mirabella v. William Penn Charter Sch.*, No. CV 15-1162, 2017 WL 1062460, at *2 (E.D. Pa. 2017), *aff'd sub nom. Mirabella By Mirabella v. William Penn Charter Sch.*, 752 F. App'x 131 (3d Cir. 2018) ("Defendants correctly note that, under the applicable provision of the ADA, aside from attorney's fees, injunctive relief is the only available remedy . . . .  As a high school graduate presently enrolled in university, [plaintiff] will not be returning to high school and will not again be subjected to [the behavior giving rise to the instant case].")).

In response, relying upon a narrow reading of *Mirabella*, Dobson contends that he continues to have a personal stake in the outcome of his ADA claim and that his claim is therefore not moot.  Specifically, Dobson argues, if prospective

injunctive relief is granted, he would be entitled to the School's post-secondary education scholarship program. (Doc. 146 at 5 (citing *Mirabella,* 752 F. App'x at 133 ("Developments that 'eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief' render a case moot, irrespective of when the developments occur during federal judicial proceedings.")).

In light of *Mirabella*, we agree with Defendants and are unpersuaded by what we perceive to be Dobson's misapplication of that case.  In *Mirabella*, a former high school student and his parents sued the student's former school for violations of the ADA after the student had graduated.  The district court dismissed that claim as moot and the Third Circuit affirmed.  In so holding, our Court of Appeals stated:

> The Constitution commands that we consider actual cases and controversies only, not moot ones.  Our "ability to grant effective relief lies at the heart of the mootness doctrine."  Developments that "eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief" render a case moot, irrespective of when the developments occur during federal judicial proceedings.
>
> Graduation is one such development: When a student challenges the legality of a school's conduct, the student's "graduation typically moots her claim for injunctive or declaratory relief."  In *Donovan*, we held that a student's graduation mooted her request to enjoin her high school from denying her Bible club certain privileges.  So too here. [Plaintiff's] graduation means that any injunctive relief under the ADA "would have no impact on [him] whatsoever."

A longstanding but "extremely narrow" exception applies when a student's claims are "capable of repetition, yet evading review." For the exception to apply, "the challenged action [must be] too short in duration to be fully litigated before the case . . . become[s] moot" and "there [must be] a reasonable expectation that the complaining party will be subjected to the same action again." As in *Donovan*, the exception does not apply to [Plaintiff]: As a high school graduate presently enrolled in university, he will not be returning to high school and will not again be subjected to [the Defendant's behavior which gave rise to the instant action].

*Mirabella*, 752 F. App'x at 133 (internal citations and footnotes omitted).

In this case, Dobson seeks injunctive relief under the ADA to remedy the discrimination he purportedly suffered. However, because Dobson has already graduated high school, his claim is moot. *See id*. It is axiomatic that one cannot graduate high school twice. Accordingly, we are unpersuaded by Dobson's contention that his claim is not moot because he has a "personal stake in the outcome of his ADA claim." (Doc. 146 at 6). In so arguing, Dobson has failed to consider that claims are moot not only when a plaintiff lacks a personal stake in the claim but also when "a court [is un]able to grant the requested relief." *Mirabella*, 752 F. App'x at 133. In this case, Dobson's ADA claim is mooted for the latter reason.

In turn, we are also unable to declare Dobson eligible for the post-secondary education grants that would have been available to him had he graduated from the School under the guise of prospective injunctive relief. "Under Title III of the ADA, private plaintiffs may not obtain monetary damages." *Anderson v. Macy's,*

*Inc.*, 943 F. Supp. 2d 531, 538 (W.D. Pa. 2013).  Because Dobson has already graduated high school, this Court cannot declare him retroactively eligible for post-secondary education grants reserved for graduates (and thereby circuitously grant him damages) under the guise of prospective injunctive relief.  *See Mirabella*, 752 F. App'x at 133.  Accordingly, Dobson's ADA claim as outlined in Count I shall be dismissed.

### a. Count VIII – Breach of Fiduciary Duty

Defendants argue that Dobson has failed to state a claim for breach of fiduciary duty in Count VIII for two reasons.  First, Defendants argue that Dobson's complaint fails to specifically allege the existence of a fiduciary relationship between the School and himself—a necessary element of a breach of fiduciary duty claim.  Rather, Defendants contend, Dobson alleges only a fiduciary relationship between the School and the School's trustees.  Second, Defendants posit, even had Dobson alleged a fiduciary relationship between himself and the School, Pennsylvania courts have refused to find that such a duty could exist as a matter of law.  (Doc. 142 at 20 (citing *Gjeka v. Delaware Cty. Cmty. Coll.*, No. CIV.A. 12-4548, 2013 WL 2257727, at *11 (E.D. Pa. May 23, 2013)).  Thus, Defendants conclude, Dobson's breach of fiduciary duty claim necessarily fails.

In response, Dobson begins by pointing out that, under Pennsylvania law, to state a claim for breach of fiduciary duty, a plaintiff must allege only that: "(1) the

defendant acted negligently or intentionally failed to act in good faith and solely

for the benefit of the plaintiff in all matters for which he or she was employed; (2)

that the plaintiff suffered injury; and (3) that the agent's failure to act solely for the

plaintiff's benefit . . . was a real factor in bringing about plaintiff's injuries."  (Doc.

146 at 7 (quoting *Gjeka*, 2013 WL 2257727, at *11)).  In turn, Dobson submits, he

has stated that Defendants failed to act in good faith and for his benefit, that he

suffered an injury, and that Defendants' failure to act caused that injury.  Thus,

Dobson concludes, he has adequately stated a claim for breach of fiduciary duty

such that his claim survives a motion to dismiss.

Moreover, Dobson argues, contrary to Defendants' wholesale insistence that

Pennsylvania courts have refused to find a fiduciary relationship between a private

school and its student, federal courts applying Pennsylvania law have refused to

dismiss an action between a private university and a student on that basis.  (Doc.

146 at 8 (citing *Dalgic v. Misericordia Univ.*, No. 3:16-CV-0443, 2017 WL

4347014, at *4 (M.D. Pa. Sept. 29, 2017)).  Thus, Dobson concludes, he has stated

sufficient facts that demonstrate the plausible existence of a fiduciary relationship

between himself and the School and Count VIII need not be dismissed.  We agree.

In the instant dispute both parties rely upon *Gjeka v. Delaware County*

*Community College* in support of their respective positions.  In *Gjeka*, the district

court summarized a breach of fiduciary claim under Pennsylvania law as follows:

A fiduciary relationship arises when a person has a duty to act for or give advice for the benefit of another person on matters within the scope of their relationship. Under Pennsylvania law, "[a fiduciary] relationship exists where one person has reposed a special confidence in another to the extent that the parties do not deal with each other on equal terms, either because of an overmastering dominance on one side or weakness, dependence or justifiable trust, on the other."

In Pennsylvania, to state a claim for breach of fiduciary duty, a plaintiff must allege that: "(1) the defendant acted negligently or intentionally failed to act in good faith and solely for the benefit of the plaintiff in all matters for which he or she was employed; (2) that the plaintiff suffered injury; and (3) that the agent's failure to act solely for the plaintiff's benefit . . . was a real factor in bringing about plaintiff's injuries."

*Gjeka*, 2013 WL 2257727, at \*10 (internal citations omitted).

In his amended complaint, Dobson contends that the School controlled nearly every aspect of his life. (Doc. 131 at ¶ 33). Indeed, the Enrollment Agreement at issue in this case clearly signals as much. Moreover, Dobson plainly alleges in his amended complaint that a "special relationship . . . existed between Defendants and [himself]." (Doc. 131 at ¶ 151). Further, to reiterate, Dobson's amended complaint also alleges that Defendants failed to act in good faith and for his benefit and that he, in turn, suffered injury as a result. Accordingly, Dobson has adequately stated a claim for breach of fiduciary duty notwithstanding Defendants' cursory assessment to the contrary.

We are unpersuaded by Defendants' form-over-substance argument that Dobson's claim must fail be he has failed to specifically allege the existence of a fiduciary relationship between the School and himself but rather has alleged only a

fiduciary relationship between the School and the School's trustees.  In resolving a motion to dismiss pursuant to Rule 12(b)(6), a court may consider "any matters incorporated by reference or integral to the claim . . . [and] items appearing in the record of the case."  *Buck*, 452 F.3d at 260.  To survive a motion to dismiss, a civil plaintiff must only allege facts that "raise a right to relief above the speculative level."  *Victaulic Co.,* 499 F.3d at 235.  A formulaic recitation of the elements of a claim is not necessary.  Here, Dobson plainly alleges the existence of a special relationship between the Defendants and himself which is then incorporated by reference into Count VIII.  Thus, we are unpersuaded by Defendants view that Dobson's failure to recite certain talismanic points otherwise referenced in the amended complaint is fatal to his claim.

We are also unpersuaded by Defendants' view that Pennsylvania law has found that no fiduciary duty exists as a matter of law between a private school and its students.  "Although it would be premature at this stage of the litigation to conclude that a special relationship *in fact existed* between these parties, [Dobson's] factual allegations are sufficient to 'raise a right to relief above the speculative level' such that the existence of a special relationship required to support his claim is 'plausible on its face.'"  *See Dalgic*, 2017 WL 4347014, at *4 (emphasis added).  Accordingly, we shall deny Defendants' motion to dismiss Count XIII.

### b.  Count IX – Breach of Contract

In their next issue, Defendants argue that, because the Hershey Trust Company was never a party to the Enrollment Agreement which forms the basis of Dobson's breach of contract claim, the breach of contract claim must be dismissed as against the Hershey Trust Company.  We agree.  The Hershey Trust Company was never a party to the Enrollment Agreement and thus cannot be held liable for a breach of its terms.  Because Dobson provides no basis to find otherwise, we shall dismiss Count IX as against Defendant Hershey Trust Company.

Defendants also argue that Dobson has failed to state a claim for breach of contract claim as against the other Defendants as well.  In his amended complaint, Dobson posits that Defendants breached paragraphs 3, 5, 6, and 7 of the Enrollment Agreement.

Paragraphs 3 and 5 of the Enrollment Agreement state as follows:

You agree that your child will be present and participate in the School's program on the days required by the School calendar.  All absences, except for life changing events or those the School approves in advance, are considered unexcused and will result in some disciplinary action.  If your child is away from the School for 14 days without the School's permission, the School will treat the absence as a decision by you to withdraw your child as described in . . . this agreement.

* * *

You agree that your child must obey all School rules and policies while enrolled at the School.  These rules address behavior, program requirements, visiting privileges, vacations, studies, chores, substance abuse, and all other matters relating to your child's conduct at the

School.  Your child must obey School staff and respect other students.
You understand that failure to follow these rules and policies will result
in discipline for your child and could lead, in the sole discretion of the
School, to your child's expulsion.

(Doc. 131-3).  Defendants contend that paragraphs 3 and 5 do not bind the School

in any way.  Rather, those paragraphs outline the duties and responsibilities of the

signatory, in this case, Dobson's mother.  Thus, Defendants conclude, in the

absence of any obligation, the School could not be in breach and Dobson's breach

of contract claims premised upon paragraphs 3 and 5 must be dismissed.

Defendants also argue that Dobson has failed to plead sufficient facts to state

a claim for breach of paragraphs 6 and 7 of the Enrollment Agreement.  Paragraphs

6 and 7 state as follows:

The School has rules about student dating and sexual behavior that it
revises from time to time.  The School will discipline your child if he
or she violates these rules.  You agree to read these rules and support
the School's enforcement of these rules with your child.  You also agree
that the School is not responsible for your child's decision to violate
these rules or the consequences of a violation of these rules by any
student.

The School encourages sexual abstinence and provides its students with
sex education, sound moral training, and opportunities to talk about
their sexual development with caring adults.  If your child decides to
engage in sexual activity or other high risk life styles, the School will
counsel your child about the risks and consequences of this activity and
will seek your child's agreement to involve you in the counseling
process.  If your child still chooses to engage in other high risk life
styles, he or she will be offered appropriate counseling and health
services.

* * *

You authorize the School to provide your child with all necessary medical, dental, psychological and psychiatric services while he or she is under the School's care. You agree that the School may obtain these health services for your child from health service providers outside the School. The School will make reasonable efforts to advise you in advance of all non-routine or inpatient procedures that require immediate attention. The School will make reasonable attempts to obtain your advance authorization for all elective procedures. Any health insurance you have for your child will be primarily responsible for payment of outside health care services authorized by the School. If you do not have insurance for your child, the School will pay all health care costs authorized by the School.

(*Id*.).

Defendants argue that Dobson has failed to state a claim for breach of contract under paragraph 6 because Dobson has failed to demonstrate that the School's duties under that paragraph were ever triggered. According to Defendants, paragraph 6 imposes two distinct duties upon the School which are independently triggered. First, if the student engages in high-risk sexual activity, then the School will provide counseling concerning that activity. Second, if, and only if, the child *again* "chooses to engage in a high[-]risk life style, he or she will be offered appropriate counseling and health services." (*Id*.). Accordingly, Defendants aver, because Dobson's complaint references only one instance of high-risk sexual behavior, Dobson's contention that the School breached its duty to provide him with "appropriate counseling and health services" necessarily fails because the second, independently triggered contract provision was never activated. In closing, Defendants summarily argue that Dobson has failed to state a

claim for breach of contract under paragraph 7 because he has failed to state sufficient facts in support thereof.

In response, Dobson contends that he has stated a claim for breach of paragraphs 3, 5, 6, and 7 of the Enrollment Agreement because he has sufficiently stated a claim for a breach of the implied covenant of good faith and fair dealing. According to Dobson, Pennsylvania has adopted the Restatement (Second) of Contracts § 205 concerning the duty of good faith and fair dealing.  (Doc. 146 at 10).  Comment a to Section 205 makes clear that "[g]ood faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party."  (*Id*. (citing RESTATEMENT (SECOND) OF CONTRACTS § 205, cmt. a)).  In turn, Dobson avers, a breach of the covenant of good faith and fair dealing constitutes a breach of contract.  (*Id*. (citing *Zaloga v. Provident Life & Acc. Ins. Co. of Am*., 671 F.Supp.2d 623, 630 (M.D. Pa. 2009)).

In this case, Dobson argues, undergirding paragraphs 3 and 5 of the Enrollment Agreement is the "good faith, justified expectation that [Dobson] would *not* be expelled from [the School] *unless* he violated the School rules and policies." (Doc. 146 at 11 (emphasis in original)).  Accordingly, Dobson concludes, when coupled with the standard of review applicable at a motion to dismiss and the requirement to act in good faith, and considering the fact that the

School has not alleged that Dobson violated any particular rule or policy or that Dobson was absent without the School's approval, he has sufficiently stated a claim for relief for a breach of the covenant of good faith and fair dealing implied within paragraphs 3 and 5 of the Enrollment Agreement.

Likewise, Dobson avers, as to paragraph 6, he had "a good faith, justified expectation that [he] would only be offered appropriate counseling and health services," whether the counseling was offered based upon the first or second documented engagement in high-risk sexual activity.  (Doc. 146 at 12–13 (emphasis removed)).  According to Dobson, Defendants' suggestion that the duty to provide "appropriate counseling" applies only to the second encounter, "flies in the face of the [duty of good faith and fair dealing] imposed on every contract under Pennsylvania law."  (*Id*. at 13).

Finally, Dobson argues that he has stated sufficient facts to support his claim that Defendants breached paragraph 7 of the Enrollment Agreement.  Specifically, Dobson argues that he had a good faith expectation that the School would provide him with "all necessary medical, dental, psychological and psychiatric services." (*Id*. at 14).  In turn, "Defendants violated the enrollment contract by failing to appropriately treat [his] mental health illness (depression and suicidal ideation)— and, in fact, exacerbating that depression further by groundlessly expelling [him]." (*Id*. at 14).  Accordingly, Dobson concludes, he has stated a claim for breach of

paragraphs 3, 5, 6, and 7 of the Enrollment Agreement.  We agree with Dobson as to all of his breach of contract claims.

Pennsylvania courts have adopted Section 205 of the Restatement (Second) of Torts.  *See Herzog v. Herzog*, 887 A.2d 313, 317 (Pa. Super. 2005).  That Section provides that "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement."  RESTATEMENT (SECOND) OF CONTRACTS § 205.  "Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party; it excludes a variety of types of conduct characterized as involving 'bad faith' because they violate community standards of decency, fairness or reasonableness."  *Id.* at cmt. a.

> [B]ad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. A complete catalogue of types of bad faith is impossible, but the following types are among those which have been recognized in judicial decisions: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

*Id.* at cmt. d.

In his amended complaint, Dobson argues that Defendants breached: (1) paragraphs 3 and 5 of the Enrollment Agreement by expelling him despite his compliance with the school rules; (2) paragraph 6 of the Enrollment Agreement by failing to provide him with appropriate counseling and health services; and (3)

paragraph 7 of the Enrollment Agreement by failing to provide him necessary psychological and psychiatric services while under the School's care.  Taking Dobson's averments as true, as is our duty at this juncture, we find that Dobson has plausibly stated a claim for breach of contract vis-à-vis a breach of the implied covenant of good faith and fair dealing.

Based upon the Enrollment Agreement, Dobson justifiably expected that he would not be expelled unless he violated the school rules and that he would be provided with appropriate counseling and medical services while enrolled at the School.  Dobson avers that he was not provided as much.  Thus, Dobson has plausibly stated a claim for a breach of the covenant of good faith and fair dealing. *See* RESTATEMENT (SECOND) OF CONTRACTS § 205 at cmt. a ("Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party; it excludes a variety of types of conduct characterized as involving 'bad faith' because they violate community standards of decency, fairness or reasonableness."); *Herzog*, 887 A.2d at 317.  Accordingly, Defendants' motion to dismiss Count IX shall be denied.  *See Phillips v. Cty. of Allegheny*, 515 F.3d at 231 (holding that, in considering a motion to dismiss pursuant to Rule 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable

reading of the complaint, the plaintiff may be entitled to relief"); *Twombly*, 550 U.S. at 555 (holding that to survive a motion to dismiss, a complaint must contain only a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests").

## IV.   CONCLUSION

For the foregoing reasons, we shall grant in part and deny in part Defendants' motion to dismiss.[2]

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

Defendants' Motion to Dismiss (Docs. 141) is **GRANTED IN PART AND DENIED IN PART** to the following extent:

1. Defendants' motion to dismiss Count I is **GRANTED**.

2. Defendants' motion to dismiss Count VIII is **DENIED**.

3. Defendants' motion to dismiss Count IX is **GRANTED** to the extent it seeks dismissal of Count IX as against Defendant Hershey Trust Company.  Count IX is **DISMISSED** as against Defendant Hershey Trust Company.  Defendants' motion to dismiss Count IX is **DENIED** in all other respects.

---

[2]   Because Dobson has withdrawn his negligence *per se* claim and his civil conspiracy to endanger the welfare of children claim, (Doc. 146 at 15), we shall dismiss those claims as withdrawn.

4.  Counts VII and X are **DISMISSED** as withdrawn.


<u>/s/ John E. Jones III</u>
John E. Jones III
United States District Judge