# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ADAM DOBSON,

        Plaintiff,

    v.

THE MILTON HERSHEY SCHOOL AND SCHOOL TRUST, et al.

        Defendants.

Civil Action

No. 1:16-cv-01958-JEJ
(The Honorable John E. Jones)
(The Honorable Martin C. Carlson)

## PROPOSED INTERVENOR'S REPLY BRIEF IN SUPPORT OF MOTION TO INTERVENE AND UNSEAL

Katie Townsend (*pro hac vice*)
Jennifer Nelson (*pro hac vice*)
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, D.C. 20005
Phone: 202.795.9300
Facsimile: 202.795.9310
ktownsend@rcfp.org
jnelson@rcfp.org

Michael Berry
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Phone: 215.988.9773
Facsimile: 215.864.8999
berrym@ballardspahr.com

*Counsel for Proposed Intervenor*
*The Philadelphia Inquirer, PBC*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................... ii

INTRODUCTION ................................................................................................. 1

ARGUMENT ........................................................................................................ 3

    I.     The Inquirer's Motion to Intervene Should be Granted........................ 3

          A.    Defendants' Argument that Intervention Should Be Denied
               Due to a "Lack of Any 'Public' Aspect to this Case" Is
               Legally and Factually Meritless. ................................................. 3

          B.    The Inquirer's Intervention Would Not Prejudice Any Party. ... 5

    II.    The Common Law and First Amendment Rights of Access Apply
          to the Sealed Records. ........................................................................... 9

          A.    The First Amendment and Common Law Right of Access
               Applies to the Sealed Records. .................................................... 9

          B.    Even if Any of the Sealed Records Are Discovery Motions,
               Defendants Are Required to Demonstrate Good Cause to
               Justify Their Continued Sealing. ................................................ 11

    III.    Defendants Fail to Meet Their Burden to Demonstrate that
          Continued, Wholesale Sealing Is Warranted Under Applicable
          Legal Standards. .................................................................................. 12

          A.    Defendants' Privacy-Related Arguments Fail; To the Extent
               the Sealed Records Contain Any "Personally Identifying
               Information," Such Information Can be Redacted. .................. 12

    IV.    Defendants' Contention that The Inquirer Is Precluded from
          Seeking Access to the Sealed Records is Meritless. ........................... 14

CONCLUSION ................................................................................................... 16

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.8(b)...................... 18

## TABLE OF AUTHORITIES

**Cases**                                                              **Page(s)**

*Agresta v. Philadelphia*,
   801 F. Supp. 1464, 1471 (E.D. Pa. 1992) ....................................................15

*Avandia Mktg., Sales Practices & Prod. Liab. Litig.*,
   924 F.3d 662 (3d Cir. 2019)................................................................2, 7, 12

*Bank of Am. Nat. Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs.*,
   800 F.2d 339 (3d Cir. 1986)................................................................2, 9, 11

*Constand v. Cosby*,
   112 F. Supp. 3d 308 (E.D. Pa. 2015) ............................................................5

*Constand v. Cosby*,
   232 F.R.D. at 486 (E.D. Pa. 2006) ................................................................4

*Constand v. Cosby*,
   833 F.3d 405 (3d Cir. 2016)....................................................................5, 15

*Craig v. Harney*,
   331 U.S. 367 (1947) ......................................................................................4

*Fair Lab. Practices Assocs. v. Riedel*,
   666 F. App'x 209 (3d Cir. 2016)....................................................................5

*Glenmede Tr. Co. v. Thompson*,
   56 F.3d 476 (3d Cir. 1995)..........................................................................11

*Haque v. Swarthmore College*,
   No. CV 15-1355, 2017 WL 3218073, at *4 (E.D. Pa. July 28, 2017) ...........7

*Hayman Cash Register*,
   669 F.2d 162, 168 (3d Cir. 1982)................................................................15

*In re Cendant Corp.*,
   260 F.3d 183 (3d Cir. 2001)....................................................................9, 11

*In re Fine Paper*,
    695 F.2d 494, 497 (3d Cir. 1982) ...................................................................8

*In re Nat'l Football League Players' Concussion Injury Litig.*,
    No. 14-1995, 2019 WL 188431, at *9 (E.D. Pa. Jan 14, 2019) .....................8

*LEAP Systems, Inc. v. MoneyTrax, Inc.*,
    638 F.3d 216 (3d Cir. 2011) .....................................................................6, 7

*Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*,
    998 F.2d 157 (3d Cir. 1993) ................................................................passim

*Littlejohn v. Bic Corp.*,
    851 F.2d 673 (3d Cir. 1988) ........................................................................7

*Miller v. Indiana Hospital*,
    16 F.3d 549 (3d Cir. 1994) .........................................................................14

*Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*,
    72 F.3d 361 (3d Cir. 1995) ...........................................................................5

*N. Jersey Media Grp. v. United States*,
    836 F.3d 421 (3d Cir. 2016) ........................................................................11

*Pansy v. Borough of Stroudsburg*,
    23 F.3d 772 (3d Cir. 1994) .......................................................................3, 8

*Press-Enter. Co. v. Super. Ct.*,
    464 U.S. 501 (1984) .............................................................................13, 14

*Press-Enter Co. v. Super. Ct*,
    478 U.S. 1 (1986) .........................................................................................9

*Publicker Indus., Inc. v. Cohen*,
    733 F.2d 1059 (3d Cir. 1984) ......................................................................10

*Republic of Philippines v. Westinghouse Elec. Corp.*,
    949 F.2d 653 (3d Cir. 1991) ....................................................................9, 11

*Reyes v. Freebery*,
    192 F. App'x 120 (3d Cir. 2006) .................................................................14

iii

*Seattle Times v. Rhinehart*,
    467 U.S. 20, 34 (1984) ...............................................................................10

*United States v. Thomas*,
    905 F.3d 276 (3d Cir. 2018) ...............................................................13, 15

*United States v. Wecht*,
    537 F.3d 222 (3d Cir. 2008) ......................................................................7, 9

*United States v. Whitaker*,
    372 F. Supp. 154, 161 (M.D. Pa. 1974) .......................................................15

*Zavala v. Wal-Mart Corp.*,
    2007 WL 2688934 (D.N.J. Sept. 12, 2017) .................................................13

**Treatises**                 **Page(s)**

7C Charles Alan Wright & Arthur R. Miller,
    *Federal Practice and Procedure* § 1916 (3d ed. 2019) ..................................6

## **INTRODUCTION**

Rather than address the legal issues raised by the Motion to Intervene and Unseal Judicial Records filed by The Philadelphia Inquirer, PBC—namely, the extensive sealing of judicial records in this matter in violation of the public's common law and First Amendment rights of access—Defendants' Opposition hurls baseless accusations against The Inquirer and its veteran business reporter Bob Fernandez.  Mr. Fernandez has covered matters of public concern related to the Milton Hershey School and School Trust for years, reporting fairly and accurately on litigation involving Defendants and serious allegations of misconduct leveled at the nation's wealthiest charitable school.  This type of investigative reporting is a hallmark of public interest journalism.  It is not, as Defendants suggest, the result of some elaborate conspiracy; nor is it a reason to continue to deny public access to judicial records in this case.

To the contrary, that The Inquirer has reported on the array of controversies surrounding Defendants only highlights the importance of public access to court documents in this matter.  This case involves allegations of wrongdoing against the Milton Hershey School concerning its treatment of students with mental illness, a matter of clear public concern.  Reporting on litigation involving institutions and issues of public interest is necessary even if—perhaps especially if—some of the parties involved would prefer secrecy.

Not only are Defendants' efforts to impugn the motives of The Inquirer and Mr. Fernandez offensive and unfounded, but also they are irrelevant. The Inquirer's *reason* for seeking to unseal court records in this case has no bearing on whether continued sealing is proper. *See Bank of Am. Nat. Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 345 (3d Cir. 1986) ("applicability and importance" of principles underlying right of access "are not lessened because they are asserted by a private party to advance its own interests").

Indeed, as the Third Circuit recently reiterated, the burden of demonstrating the need for continued sealing of *each* document in its entirety lies with Defendants. *Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 924 F.3d 662, 676 (3d Cir. 2019). Defendants have fallen well short of that burden. They have not even attempted to describe the sealed records on a document-by-document basis, let alone articulate a specific basis for why each of those documents, or any specific information in each document, should remain sealed. And, even if Defendants were able to meet their high burden of showing that continued sealing is necessary as to some portion of the Sealed Records at issue (they have not), redactions—not wholesale sealing—would be the appropriate remedy. Because The Inquirer's intervention is timely and non-prejudicial, and because Defendants have not met their burden to justify continued sealing under applicable legal

2

standards, The Inquirer's Motion should be granted, and the Sealed Records should be unsealed.

## **ARGUMENT**

### I.   **The Inquirer's Motion to Intervene Should be Granted.**

#### A.   **Defendants' Argument that Intervention Should Be Denied Due to a "Lack of Any 'Public' Aspect to this Case" Is Legally and Factually Meritless.**

The Inquirer's motion to intervene is based on well-established Third Circuit jurisprudence permitting third-party intervention for the purpose of challenging confidentiality orders.  *See* ECF 153-1 "Inquirer Br." at 6 (citing cases).  Rather than engage with the cases cited by The Inquirer that demonstrate the propriety of Rule 24 intervention here, Defendants invent a new test.  Specifically, they posit that "[t]he lack of any 'public' aspect to this case requires that The Inquirer's motion to intervene be denied."  *See* ECF 163 "Opp. Br." at 9–10.  In essence, Defendants attempt to elevate one of the *Pansy* factors that district courts consider before entering a protective order into a dispositive factor for the threshold determination of whether intervention should be granted.  *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786, 787–91 (3d Cir. 1994).  Yet the *Pansy* factors do not speak to whether intervention is proper under Rule 24.  *Id*.; *see also* Inquirer Br. at 11 & n. 2.  And, even if Defendants' invented test were applicable, which it is not, the Inquirer would easily pass it.

The public has a strong interest in observing civil litigation in federal courts generally, as "[w]hat transpire[s] in the courts is public property." *Craig v. Harney*, 331 U.S. 367, 374 (1947).  There is a particularly powerful public interest in this litigation, which involves allegations against a school that is home to disadvantaged students from across Pennsylvania and enjoys the substantial tax and other benefits of non-profit status.  *See* Inquirer Br. 2.

The lone case Defendants cite in support of denying intervention on the ground that there is no public interest in this case (*see* Opp. Br. at 11) offers no support for their argument.  In *Constand v. Cosby*, the Associated Press moved to intervene and lift an interim sealing order the court had entered as a stop-gap measure "to allow [it] time" to consider the propriety of a permanent sealing order restricting public access to certain discovery motions.  232 F.R.D. at 486, 488 (E.D. Pa. 2006).  Here, in contrast, The Inquirer seeks the unsealing of *judicial documents* that are subject to sealing orders entered on a *non-interim* basis.  *See*, *e.g.*, Inquirer Br. at 3–5.  And, contrary to Defendants' assertion that the court in *Cosby* "den[ied] intervention . . . absent public concerns," the case settled before the district court could make a determination as to whether to enter a non-interim protective order under Rule 26(c).[1]  Defendants also ignore the fact that nearly ten

---

[1] *See* Stipulation and Order, *Constand v. Cosby*, No. 05-cv-1099 (E.D. Pa. Nov. 8, 2006), ECF No. 96.

years later, the district court granted the Associated Press's renewed motion to

intervene and ordered the documents unsealed. *Constand v. Cosby*, 112 F. Supp.

3d 308, 319 (E.D. Pa. 2015), *vacated as moot*, 833 F.3d 405 (3d Cir. 2016).[2]

Defendants' argument that *Cosby* prohibits Rule 24 intervention in matters

between private litigants is wrong. *See, e.g., Leucadia, Inc. v. Applied Extrusion

Technologies, Inc.*, 998 F.2d 157, 164 (3d Cir. 1993) (intervention permitted in

lawsuit between private litigants); *Fair Lab. Practices Assocs. v. Riedel*, 666 F.

App'x 209, 210 (3d Cir. 2016) (same).

### B.     The Inquirer's Intervention Would Not Prejudice Any Party.

Permitting the Inquirer to intervene will neither delay this case nor prejudice

the parties.  Contrary to Defendants' framing, *see* Opp. Br. at 9–10, timeliness in

the context of Rule 24 does not refer to the mere length of time that a matter has

been pending; rather, it asks whether delay and prejudice would be caused by

intervention. *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*,

72 F.3d 361, 369 (3d Cir. 1995) (stating that "[t]he mere passage of time . . . does

not render an application untimely," and that courts should consider "(1) the stage

of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the

reason for the delay"); *see also* 7C Charles Alan Wright & Arthur R. Miller,

---

[2] Cosby appealed the district court's decision to the Third Circuit, but that appeal
was rendered moot. *Constand v. Cosby*, 833 F.3d 405, 413 (3d Cir. 2016).

*Federal Practice and Procedure* § 1916 (3d ed. 2019) ("the mere lapse of time by itself does not make an application untimely").

No party will be prejudiced if The Inquirer is permitted to intervene.[3] Indeed, Plaintiff has not opposed the unsealing, and Defendants' assertion that unsealing documents would cause prejudice simply because the documents were previously sealed, *see* Opp. Br. at 10, is incorrect as a matter of both law and logic. No member of the press or public could *ever* intervene to unseal court documents if the mere act of unsealing alone caused prejudice of the type that would warrant a denial of intervention. Defendants' circular legal argument fails on its face, and the cases they rely on do not hold otherwise.

In *LEAP Systems, Inc. v. MoneyTrax, Inc.*, for example, the Third Circuit affirmed the district court's denial of an intervenor's motion to unseal, but did not disturb the district court's decision to grant the intervenor's motion to intervene. 638 F.3d 216, 218 (3d Cir. 2011). In contrast to the generalized harm Defendants claim will occur from unsealing here, in *LEAP*:

> [t]he District Court's decision to deny [the intervenor's] motion was **based on more** than LEAP'S broad assertions of financial injury and a

---

[3] Tellingly, Defendants do not argue that any delay would occur if the Court grants The Inquirer's motion to intervene. Nor could they. The Inquirer's intervention is tailored to a specific purpose that is collateral to the merits of the litigation— unsealing court documents. Particularly given that The Inquirer's motion has now been referred to Magistrate Judge Carlson (*see* ECF 164), it can be resolved as the litigation proceeds on the merits before Judge Jones.

> generalized concern about discouraging settlement agreements. Rather, the District Court specifically found that LEAP would not have entered into the settlement agreements ***but for*** the Court's assurance of confidentiality.

*Id.* (bolding added, italics original). LEAP, which was decided on the basis of its unique facts, has no application here. The other cases cited by Defendants serve them no better. In *Haque v. Swarthmore College,* the court directly rejected Defendants' premise, stating that "a party's reliance on an order is *not* dispositive because it is assumed that the parties acted with knowledge that it might be altered or modified at a later date." No. CV 15-1355, 2017 WL 3218073, at *4 (E.D. Pa. July 28, 2017) (emphasis added). And the Third Circuit's recent decision in *Avandia*, 924 F.3d at 673, supports The Inquirer's arguments, not Defendants'. The "document-by-document review of the contents of the challenged documents," including documents that had been previously sealed, required by the Third Circuit in that case is precisely what The Inquirer asserts is required here. *Id*.

Finally, Defendants' allegation of untimeliness misses the mark. The public interest in understanding the full nature and complete posture of this litigation does not diminish over time. Instead, as the issues have been clarified and distilled, the public interest has increased and the need for disclosure remains just as strong. *See United States v. Wecht*, 537 F.3d 222, 233 (3d Cir. 2008) ("the media acts as a surrogate for the public in asserting a right of access"); *Littlejohn v. Bic Corp.*, 851 F.2d 673, 678 (3d Cir. 1988) (explaining that access "promotes public confidence

in the judicial system," enhances "the quality of justice dispensed by the court," and ensures greater understanding of the judicial process).[4]

Neither case Defendants cite in support of their contention that The Inquirer's motion was untimely is applicable. *See* Opp. Br. at 10. In fact, neither involved a motion to unseal. In *In re Fine Paper*, the intervening parties' motion to modify a class certification order was deemed untimely because the class action suit had already reached a court-approved settlement resulting in the entry of a final judgment. 695 F.2d 494, 497 (3d Cir. 1982). Similarly, in *In re Nat'l Football League Players' Concussion Injury Litig.*, the court held intervention untimely for a number of reasons not remotely present in the case before the court, including that a settlement had already been reached. No. 14-1995, 2019 WL 188431, at *9 (E.D. Pa. Jan. 14, 2019). These class action intervenor cases have no relevance here. The Inquirer's motion to intervene is for the limited purpose of unsealing court records; it runs no risk of disturbing the litigation of the merits, let alone undoing a previously entered judgment or settlement.

---

[4] Here, any alleged "delay" is, as the Third Circuit has recognized, a "relatively short delay" for purposes of cases in which intervention has been granted. *See Pansy*, 23 F.3d at 780 ("In *United Nuclear,* intervention was permitted approximately *three years* after the underlying action was settled and dismissed, 905 F.2d at 1427, and in *Beckman,* intervention was allowed approximately *two years* after the underlying case was terminated, 966 F.2d at 471, 473. In the instant case, there was *only a six- and one-half-month* delay between the time of settlement and the motion for intervention. This relatively short delay, in itself, leads us to the conclusion that intervention should be permitted.") (italics added).

Accordingly, because The Inquirer's motion to intervene is both timely and non-prejudicial, it should be granted.

## II.   The Common Law and First Amendment Rights of Access Apply to the Sealed Records.

### A.   The First Amendment and Common Law Right of Access Applies to the Sealed Records.

The common law right of access is far-reaching.  It attaches to *all* "judicial records," including all documents filed in connection with "pretrial motions of a nondiscovery nature, *whether preliminary or dispositive*, and the material filed in connection therewith."  *Leucadia*, 998 F.2d at 164 (emphasis added); *see also In re Cendant Corp.*, 260 F.3d 183, 192 (3d Cir. 2001); *Bank of Am.*, 800 F.2d at 344–45; *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 661 (3d Cir. 1991).  In addition to the common law right of access, the public enjoys a First Amendment right of access to documents that have "historically been open to the press and the general public" and where "public access plays a significant positive role in the functioning of the particular process in question."  *Press-Enter Co. v. Super. Ct.*, 478 U.S. 1, 8–9 (1986) ("*Press-Enterprise II*"); *see also Wecht*, 537 F.3d at 233–43.  Where the First Amendment right applies, the party seeking closure must "demonstrate 'an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'"

*Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1073 (3d Cir. 1984) (quoting

*Press-Enterprise II*, 478 U.S. at 9).

Even if the First Amendment right of access does not extend to the Sealed

Records, the common law standard—not the "good cause" standard applicable

only to "raw discovery" and motions of a purely discovery nature, such as motions

to compel—clearly applies.  *Leucadia*, 998 F.2d at 163–64.  Defendants' citation

to *Seattle Times v. Rhinehart* is, accordingly, unavailing.  *Seattle Times* dealt not

with the public's right of access to court records, but with whether a protective

order preventing *parties* from disseminating materials merely exchanged during

discovery violated the First Amendment.  467 U.S. 20, 34 (1984).  Here, "because

[The Inquirer] seeks only access to documents that are on file, this case does not

implicate the standards to be used by the court in entering a pretrial protective

order that prohibits the parties from disseminating in advance of trial information

in their possession obtained through the discovery process, the issue resolved in

[*Seattle Times*]."  *Leucadia*, 998 F.2d at 162.

Throughout their brief, Defendants incorrectly attempt to stretch the

definition of "discovery" beyond its legal meaning.  *See* Opp. Br. at 12.  Discovery

materials exchanged by parties may be withheld from public disclosure on a

showing of good cause in order to encourage parties to liberally share private

information through discovery.  *See N. Jersey Media Grp. v. United States*, 836

F.3d 421, 430 (3d Cir. 2016); *Leucadia*, 998 F.2d at 164–65.  Discovery motions, such as motions to compel, are a vehicle for the court to resolve disputes about parties' discovery obligations.  Unlike discovery motions, preliminary motions— including, for example, motions to seal judicial records, which implicate the public's right of access—have clear "adjudicatory significance," and thus the common law right of access attaches.  *See N. Jersey Media Grp.*, 836 F.3d at 435. This distinction is ignored by Defendants.  As Third Circuit precedent makes clear, any filing used by the court in "adjudicatory proceedings," including preliminary and non-dispositive proceedings, is a judicial record to which the common law right of access attaches.  *Cendant*, 260 F.3d at 192; *see also Bank of Am.*, 800 F.2d at 344–45; *Westinghouse*, 949 F.2d at 661.

**B.     Even if Any of the Sealed Records Are Discovery Motions, Defendants Are Required to Demonstrate Good Cause to Justify Their Continued Sealing.**

Even public access to "raw discovery," though not generally within the ambit of the common law or First Amendment rights of access, cannot be restricted at the whim of a litigant.  A party seeking a protective order governing discovery material under Federal Rule of Civil Procedure 26(c) must demonstrate "good cause"—*i.e.*, "that disclosure will cause a clearly defined and serious injury." *Glenmede Tr. Co. v. Thompson*, 56 F.3d 476 (3d Cir. 1995).  Once a protective order is in place, public access to discovery materials is evaluated using the "good

cause" standard in order to ensure the public interest in access to discovery materials is not undermined by "overly broad and unjustifiable protective orders agreed to by the parties for their self-interests." *Leucadia*, 998 F.2d at 164–66.

Given the extensive nature of the sealing in this matter, The Inquirer cannot assess whether any of the Sealed Records involve motions about discovery disputes, like a motion to compel. To the extent that any of the Sealed Records fall within the narrow category of discovery motions, Defendants must demonstrate "good cause" to justify their sealing.

## III. Defendants Fail to Meet Their Burden to Demonstrate that Continued, Wholesale Sealing Is Warranted Under Applicable Legal Standards.

### A. Defendants' Privacy-Related Arguments Fail; To the Extent the Sealed Records Contain Any "Personally Identifying Information," Such Information Can be Redacted.

While Defendants recite various state and federal laws that protect Personally Identifiable Information (*see* Opp. Br. at 18), they do not identify which documents contain what, if any, protected information. That alone requires the unsealing of the sealed records, as it is *Defendants'* burden to establish, on a document-by-document basis, that continued sealing is justified. *See Avandia*, 924 F.3d at 676.

Moreover, to the extent protected information is included in any of the Sealed Records enumerated in The Inquirer's opening brief (*see* Inquirer Br. at 1),

Defendants fail to explain why such information cannot simply be redacted.[5]
While privacy concerns can serve as a countervailing interest that overcomes the
public's rights of access to court records, such concerns can be addressed through
limited sealing and redaction.  *See Zavala v. Wal-Mart Corp.*, 2007 WL 2688934,
at *10 (D.N.J. Sept. 12, 2017) (finding sealing appropriate only in cases in which
"redaction would render the document meaningless"); *see also Press-Enter. Co. v.
Super. Ct.*, 464 U.S. 501, 510 (1984) ("*Press-Enterprise I*").

Redaction is particularly appropriate here.  Plaintiff does not object to the
unsealing sought by The Inquirer and has asserted no privacy interest in sealing.
And, to the extent any of the Sealed Records contain "personally identifying
information" as to any individual other than Plaintiff that should not be disclosed,
such information should be redacted rather than maintaining the entirety of the
documents in question under seal.

---

[5] Defendants argue in a footnote that redaction "would not sufficiently protect the
privacy interests at stake due to the pervasiveness of confidential information
throughout the sealed documents." *See* Opp. Br. at 21, n.5.  This generic,
conclusory statement is inadequate.  Defendants bear the burden of demonstrating
the need for sealing on a document-by-document basis.  In *United States v.
Thomas*, which Defendants cite in support of continued wholesale sealing, the
district court's decision not to unseal a plea document was premised on national
security and safety issues implicated by that document.  905 F.3d 276, 283 (3d Cir.
2018).  No such issues are present in this case.  Further, in that same decision, the
Third Circuit vacated the district court's order denying access to an exhibit to a
motion that did not implicate those concerns, ordering the district court to consider
"to what extent the Exhibit should be redacted, if at all." *Id*. at 284.

In short, even if Defendants could meet their burden to show on a document-by-document basis that sealing is warranted under the applicable standards set forth above to protect third parties' privacy, this Court should order limited, tailored redaction—not permit continued wholesale sealing of these court filings. Further, any such redactions should be justified by on-the-record findings "concerning the effects of disclosure" that are "specific enough that a reviewing court can determine whether the closure order was properly entered." *Miller v. Indiana Hospital*, 16 F.3d 549, 551 (3d Cir. 1994); *Press-Enterprise I*, 464 U.S. at 510.

## IV.    Defendants' Contention that The Inquirer Is Precluded from Seeking Access to the Sealed Records is Meritless.

Courts have an ongoing responsibility to revisit the need for sealing. *See Reyes v. Freebery*, 192 F. App'x 120, 125 (3d Cir. 2006) (district court must ask "whether there is *continuing justification* for the summary judgment record to be sealed") (citing *Miller v. Indiana Hosp.*, 16 F.3d 549, 551–52 (3d Cir. 1994)) (emphasis added).  Thus, Defendants' argument that The Inquirer is demanding the Court "overrule" itself rests on a faulty premise.  Defendants misapprehend the Court's ongoing duty to safeguard the public's rights to inspect judicial records.

The Inquirer is seeking to vindicate the public's right to access records in a case involving issues of significant public concern.  The issues it presents involving that right have yet to be adjudicated.  The coordinate jurisdiction rule

invoked by Defendants has no bearing on the pending motion.   The cases cited by

Defendants—none of which involve an intervenor or even a motion to unseal—do

not suggest otherwise.  *See* Opp. Br. at 14–16.  In *Hayman Cash Register*, the

Third Circuit affirmed the denial of a plaintiff's motion to re-transfer a case to the

District of Columbia, after it had already been transferred from that venue to the

District of New Jersey.  669 F.2d 162, 168 (3d Cir. 1982).  In *Agresta v.*

*Philadelphia*, the district court denied defendant's *third* attempt, made on the basis

of "no new case law," to convince it that plaintiffs had no "constitutionally

protected liberty interest in the companionship of their adult and married child."

801 F. Supp. 1464, 1471 (E.D. Pa. 1992).  Finally, in *United States v. Whitaker*, the

district court declined to revisit a motion to suppress evidence brought on the

grounds that a wiretap was not conducted in such a way to minimize the capture of

irrelevant communications.  372 F. Supp. 154, 161 (M.D. Pa. 1974).

In short, all of the cases cited by Defendants involve parties—not

intervenors—resurfacing previously failed arguments or motions.  None involve a

member of the media seeking to intervene in a lawsuit to assert the constitutional

and common law rights of public access to sealed judicial documents.  As set forth

above, district courts routinely permit the media to intervene to challenge

previously entered sealing orders.  *See, e.g.*, *Thomas*, 905 F.3d at 283; *Constand*,

833 F.3d 405.  The fact that this case was transferred to a different judge midway

through the litigation does not deprive The Inquirer, or any member of the public, of its ability to intervene and seek access to sealed material.

Finally, Defendants' disingenuous attempt to align The Inquirer with the Plaintiff in this case in order to argue that it should be barred from seeking access to the Sealed Records warrants little attention from this Court. *See* Opp. Br. at 2, 4–5. Defendants' suggestion that The Inquirer or its reporter, Mr. Fernandez, are conspiring with Plaintiff or anyone else connected to this litigation is baseless and absurd. The Inquirer is seeking access to the Sealed Records so that it can continue to fully and accurately report on this lawsuit to the public. Mr. Fernandez's reporting on Defendants exemplifies solid investigative journalism; it is neither evidence of a conspiracy against Defendants nor a reason to continue to deny the public access to the Sealed Records at issue here.

## **CONCLUSION**

For the reasons set forth above and the reasons stated in its opening brief, The Inquirer respectfully requests that the Court grant its motion to intervene and enter an order requiring the Clerk of the Court to immediately unseal the judicial records reflected at docket entries 45, 46, 48, 54, 55, 59, 80, 82, 85, and 86.

July 26, 2019                    Respectfully submitted,


      *Katie Townsend*
      Katie Townsend (*pro hac vice*)
Jennifer Nelson (*pro hac vice*)
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, D.C. 20005
Phone: 202.795.9300
Facsimile: 202.795.9310
ktownsend@rcfp.org
jnelson@rcfp.org


Michael Berry
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Phone: 215.988.9773
Facsimile: 215.864.8999
berrym@ballardspahr.com


*Counsel for Proposed Intervenor*
*The Philadelphia Inquirer, PBC*


17

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.8(b)

This brief complies with the word count limitation of Local Rule 7.8(b) because it contains 3,975 words.

_____*Katie Townsend*_____
Katie Townsend